NEW YORK TELEPHONE COMPANY, Respondent, v. BOARD OF EDUCATION OF THE CITY OF ELMIRA, Appellant.

112

(Argued January 21, 1936; decided March 3, 1936.)

*Philip E. Lonergan, Corporation Counsel* (*Halsey Sayles* of counsel), for appellant. The defendant Board of Education was a department of the city of Elmira within the scope of the franchise, which franchise was made in part for its benefit. (*Board of Education* v. *Van Zandt,* 119 Misc. Rep. 124; 204 App. Div. 856; 234 N. Y. 644; *Matter of College of City of New York* v. *Hylan,* 205 App. Div. 372; 236 N. Y. 594; *United States Shipping Board Corp.* v. *Western Union Tel. Co.,* 275 U. S. 415; *Lewis* v. *Board of Education,* 258 N. Y. 117; *Metzger* v. *Swift,* 258 N. Y. 440; *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297; *Matter of DeAngelis* v. *Laino,* 235 App. Div. 390.) The interpretation placed by the parties during the first thirty years of the contract shows that it was made in behalf of the school system. (*Board of Education* v. *Van Zandt,* 119 Misc. Rep. 124; *United States Shipping Board Corp.* v. *Western Union Tel. Co.,* 275 U. S. 415.) The board had no power to waive its rights under the franchise. (*Lewis* v. *Board of Education,* 258 N. Y. 117; *Carpenter* v. *Taylor,* 164 N. Y. 171.)

*Fred H. Jeffers* for respondent. The telephone service furnished to the defendant was not furnished to a city department for municipal services. (*Beveridge* v. *N. Y. E. R. R. Co.,* 112 N. Y. 1; *Moch Co.* v. *Rensselaer Water Co.,* 247 N. Y. 160; *Skinner Bros. Mfg. Co.* v. *Shevlin Engineering Co.,* 231 App. Div. 656; 257 N. Y. 562; *Brainard* v. *N. Y. C. R. R. Co.,* 242 N. Y. 125; *Codman* v. *American Piano Co.,* 229 Mass. 285; *Gunnison* v. *Board of Education,* 176 N. Y. 11; *Matter of Hirshfield* v. *Cook,* 227 N. Y. 297; *People ex rel. Wells & Newton Co.*

v. *Craig*, 232 N. Y. 125; *Matter of Fuhrmann* v. *Graves*, 235 N. Y. 77; *Matter of Brennan* v. *Board of Education*, 245 N. Y. 8; *Merry* v. *Board of Education*, 126 Atl. Rep. 215; *Farmer* v. *Haley*, 135 Atl. Rep. 12.) The defendant did not bring itself under the agreement by any practical construction of the contract. (*Board of Supervisors* v. *Burleson*, 19 S. D. Rep. 126; *N. Y. Tel. Co.* v. *Siegel-Cooper Co.*, 202 N. Y. 502; *Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *DeRemer* v. *Brown*, 165 N. Y. 410; *Gans* v. *Ætna Life Ins. Co.*, 214 N. Y. 326; *Hartigan* v. *Casualty Co.*, 227 N. Y. 175; *Citizens' Tel. Co.* v. *City of Newport*, 224 S. W. Rep. 187; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Brooklyn Public Library* v. *City of New York*, 250 N. Y. 495; *Syms* v. *Mayor*, 105 N. Y. 153; *Woolsey* v. *Funke*, 121 N. Y. 87; *Carthage Tissue Paper Mills* v. *Village of Carthage*, 200 N. Y. 1.) If the defendant had any rights under the agreement between the city of Elmira and plaintiff's predecessor, it parted with them when it entered into contracts to pay standard tariff rates for its telephone service. (*Schwartzreich* v. *Bauman-Basch, Inc.*, 231 N. Y. 196; *Wiley* v. *Dixie Oil Co.*, 43 Fed. Rep. [2d] 51; *Housekeeper Pub. Co.* v. *Swift*, 97 Fed. Rep. 290; *United States ex rel. International Contracting Co.* v. *Lamont*, 155 U. S. 303; *Gilbert* v. *United States*, 8 Wall. 358; *Parish* v. *United States*, 75 U. S. 489; *St. Croix Co.* v. *Seacoast Canning Co.*, 114 Me. 521; *Meech* v. *City of Buffalo*, 29 N. Y. 198; *Weston* v. *City of Syracuse*, 158 N. Y. 274; *Voght* v. *City of Buffalo*, 133 N. Y. 463; *Atlantic City* v. *Warren Bros. Co.*, 226 Fed. Rep. 372; *Village of Carthage* v. *Central New York Tel. Co.*, 185 N. Y. 448; *People ex rel. Wells & Newton Co.* v. *Craig*, 232 N. Y. 125.)

FINCH, J. This action was brought by the New York Telephone Company against the Board of Education of the city of Elmira to recover $4,015.98 for telephone services rendered between March 21, 1930, and June 1, 1932. The answer set up that in 1894 a franchise was

granted to the plaintiff's predecessor in title by the Common Council of the city of Elmira which provided that the departments of that city would be furnished telephone services at one-half the standard rates. The Board of Education also entered a counterclaim for $1,704.79 on the ground that it had wrongfully been charged full rates from January 10, 1924, to March 21, 1930. Special Term granted a judgment for the full amount in favor of the plaintiff and dismissed the counterclaim. The Appellate Division has affirmed. (245 App. Div. 788.)

There is no dispute concerning the facts and the question before us, therefore, is one of law involving the proper construction of the provision in the franchise. The franchise which granted the plaintiff's predecessor permission to place some of its wires under ground was granted in 1894. It contains the following:

"9. That as an additional consideration for the permission hereby granted, the said company, its successors and assigns, shall furnish and maintain for the city within one-half mile of its central office in said city and at such places as its Common Council shall direct, three free exchange telephone connections; and for all other exchange service for municipal services, shall furnish the city departments with telephones at one-half the standard rates in said city for similar services."

The defendant, the Board of Education, maintains that it is a " city department " within the meaning of that term as used in the franchise and that it is entitled to telephone service at one-half the standard rates. The record shows that from April 30, 1894, immediately following the grant of the franchise, until January 10, 1924 — a period of about thirty years — the plaintiff furnished the defendant telephone service at one-half the standard rates. In October, 1923, the plaintiff informed the defendant that it intended to discontinue the reduced rate. The defendant referred the matter to its finance committee and in 1924 adopted a report of that com-

mittee which found the defendant not entitled to the reduced rates. The plaintiff was notified and from January 10, 1924, to March 21, 1930, it charged the defendant for telephone service at the standard rates. In March of 1930 the Board of Education refused to pay for telephone service except at the rates prescribed in the franchise and has not paid for telephone service since that time.

If the phrase " city departments " occurred apart from its setting there would be much force to the argument that the Board of Education was excluded from its scope. The phrase, however, must be given the meaning intended by the contracting parties in so far as such intention is ascertainable. At the time the franchise was granted the charter of the city of Elmira (Laws of 1875, ch. 370) provided for only one branch of the city government called a department and that was the police department. From this it is obvious that the phrase " city departments " was used in a broad sense. It was equivalent to providing half rates for " city purposes." That this is the proper construction is shown by the fact that for thirty years after the adoption of the franchise, commencing immediately after its adoption and at a time when the matter was fresh in the minds of the men by whom it had been negotiated and drafted, the Board of Education was granted half rates, both parties clearly construing the phraseology as including the Board of Education as a " city department." Contrary action was not taken by the men who made the contract, nor even by men who were in the Board of Education at the time of the making of the contract, but by new members of the Board. The men who actually made the contract interpreted the language used as covering the Board of Education as a city department within the meaning of the franchise.

In *Board of Education of City of Rochester* v. *Van Zandt* (119 Misc. Rep. 124, 126; affd., 204 App. Div. 856; affd., 234 N. Y. 644) it was said: " The adoption in the final

sentence of the meaning of the phrase ' city purposes ' as used in the first sentence is supported by the practical construction that has been put upon it in its actual application. For nearly forty years the cities of the state have construed the section to include taxes levied for educational as well as for other state functions."

Similarly in *Emergency Fleet Corp.* v. *Western Union Tel. Co.* (275 U. S. 415, 417, 421, 422) Mr. Justice BRANDEIS said: " For the construction given to the act by the United States and acquiesced in by the Western Union, having been both contemporaneous, and thereafter consistently and widely applied, is not only persuasive but, in our opinion, decisive of the case."

Even in the letter sent by the plaintiff in 1923, requesting the discontinuance of half rates, the plaintiff does not entirely disclaim being bound by the franchise but makes the request " except in event the educational system is maintained by the city from city funds." In that letter the plaintiff wrote as follows: " It is our understanding that your department, in common with other municipalities, is maintained by a separate fund and discount should not apply. The discount your department has been enjoying is the same as given to municipal offices proper, as provided for them by franchise granted this Company."

In this connection we find that the Common Council of the city of Elmira raises taxes in the school district which has the same boundaries as the city and supports the Board of Education by city funds. Section 12 of chapter 370 of the Laws of 1895 provides as follows: " The common council of the city of Elmira shall have power, and it shall be their duty, to raise, from time to time, by tax, to be levied upon all the real and personal estate in said school district [having the same boundaries as the city] which shall be liable to taxation for town or county charges, such sums as may be determined upon, and certified by the board of education, to be necessary and

proper, for any or all the following purposes, for the current year: * * *."

Thus it would seem that the defendant comes within the exception which the plaintiff apparently admitted would entitle it to half rates. The plaintiff in its letter said that the defendant would have to pay full rates unless it " is maintained by the city from city funds." In the sense that the city must raise the necessary moneys, the city does maintain the defendant from city funds. Responsibility rests upon the city to find the necessary funds. (*Matter of Emerson* v. *Buck*, 230 N. Y. 380.) At the time of the awarding of the franchise any amount by which the expenses of the Board of Education could be decreased would by just so much lighten the burden laid on the city to provide the funds. Even under the construction given the franchise by the plaintiff, we find the defendant is entitled to half rates.

The plaintiff urges that even if the construction of the language of the franchise as contended for by the defendant is accepted, nevertheless, it had the right to place its wires under the city streets without the consent of the city and hence the agreement to grant half rates was without consideration. It relies upon the case of *Village of Carthage* v. *Central N. Y. Tel. Co.* (185 N. Y. 448), which held that a village could not force a telephone company to place its wires in conduits instead of on poles on the ground that section 102 of the Transportation Corporations Law (Laws of 1890, ch. 566, art. 8, § 102) gave telephone companies full power to place lines upon, over or under public roads and streets. Three years after the *Carthage* case, however, the Appellate Division in the first department reached a contrary result in *Matter of N. Y. Independent Tel. Co.* (133 App. Div. 635). Mr. Justice CLARKE writing the opinion pointed out that in the *Carthage* case a statute requiring telephone companies seeking to lay wires under ground in any city, village or town to obtain the permission of the

Common Council of the city, etc., was not brought to the attention of the court. This court affirmed the judgment of the Appellate Division on the opinion of CLARKE, J. (200 N. Y. 527). We find that at the time the franchise involved in the case at bar was granted the telephone company lacked the right to lay wires without the permission of the city (Laws of 1881, ch. 483) and that this permission was ample consideration for an agreement to charge for services.

Nor is there merit in the argument that the defendant agreed to rescind the franchise agreement and contract anew at a higher rate. The Board of Education had no right to rescind the agreement or waive its rights under the franchise. The telephone company was and is using the rights acquired under the franchise. The consideration was fully received by the plaintiff in 1894 when it was granted the right to place wires under the streets. Even if there was evidence that it subsequently decided not to take advantage of the rights granted by the franchise, it could still be required to carry out its obligations under the franchise. The plaintiff, however, is taking advantage of its rights. Hence the Board of Education could not contract away its rights. Such rights are of value and any attempt at surrender or rescission of the contract would violate that section of the State Constitution forbidding the giving of a gratuity (Const. art. VIII, § 10).

Relief under the counterclaim cannot be denied on the ground that the overpayments were made pursuant to a new contract. As noted, there could be no new contract. The payments in excess of one-half the standard rates were made in the mistaken belief that the defendant was not entitled to the benefits provided for in the franchise. This court has held that moneys paid under a mistake of law by a municipality, as were the moneys in the case at bar, may be recovered. (*New York City Employees' Retirement System* v. *Eliott*, 267 N. Y. 193; *Village of*

*Fort Edward* v. *Fish,* 156 N. Y. 363.) The defendant is not bound by the illegal acts of its former or present members, and the equities found in *Cox* v. *Mayor* (103 N. Y. 519) are not present in this case.

The judgment of the Appellate Division and that of the Trial Term should be reversed, the complaint dismissed and judgment directed in favor of defendant upon its counterclaim in the sum of $1,579.82, with costs in all courts.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and LOUGHRAN, JJ., concur.

Judgment accordingly.