CITY OF NEW YORK, Respondent, *v.* WILSON & CO., INC.,
Appellant.

Argued March 15, 1938; decided May 24, 1938.

*Charles J. Nehrbas, William R. Brown and Paul Ware* for appellant. Defendant established title to the land by undisputed evidence of adverse possession, and the court should have directed a verdict in its favor. (*Matter of City of New York* [*West Tenth St.*], 267 N. Y. 212; *Belotti* v. *Bickhardt,* 228 N. Y. 296; *Ottinger* v. *Strasburger,* 33 Hun, 466; 102 N. Y. 692; *Matter of City of New York,* 166 App. Div. 106; 217 N. Y. 1; *People* v. *Ladew,* 237 N. Y. 413; *Reid* v. *City of New York,* 274 N. Y. 178; *Dodge* v. *Gallatin,* 130 N. Y. 117; *Sherman* v. *Kane,* 86 N. Y. 57; *Baker* v. *Oakwood,* 123 N. Y. 16; *Timpson* v. *Mayor,* 5 App. Div. 424; *Knapp* v. *City of New York,* 140 App. Div. 289; *Argotsinger* v. *Vines,* 82 N. Y. 308; *Eggler* v. *N. Y. C. R. R. Co.,* 207 App. Div. 120.) No statute prevents the acquisition of title by adverse possession against the city where possession commenced prior to 1898. (*Mayor* v. *Hart,* 95 N. Y. 443; *Timpson*

v. *Mayor*, 5 App. Div. 424; *Knapp* v. *City of New York*, 140 App. Div. 289; *Matter of City of New York*, 217 N. Y. 1; *Muller* v. *Mayor*, 63 N. Y. 353; *Langdon* v. *Mayor*, 93 N. Y. 129; *Scallon* v. *Manhattan Ry. Co.*, 185 N. Y. 359.) The trial court erred in charging the jury that lapse of time together with negligence on the part of the city's officials does not establish adverse possession against the city. (*Timpson* v. *Mayor*, 5 App. Div. 424; *Knapp* v. *City of New York*, 140 App. Div. 289; *Matter of City of New York*, 217 N. Y. 1; *Reid* v. *City of New York*, 274 N. Y. 178; *Powlowski* v. *Mohawk Golf Club*, 204 App. Div. 200.) Plaintiff's claim is barred by the Statute of Limitations, and the court should have directed a verdict on that ground. (*Timpson* v. *Mayor*, 5 App. Div. 424; *Humbert* v. *Trinity Church*, 24 Wend. 587; *Towle* v. *Remsen*, 70 N. Y. 303; *Sherman* v. *Kane*, 86 N. Y. 57; *Plet* v. *Willson*, 134 N. Y. 139; *Baker* v. *Duff*, 136 App. Div. 13; 202 N. Y. 570; 213 N. Y. 649; *Good* v. *Brown*, 181 App. Div. 808.) Regardless of the question of title, defendant has riparian rights over the property in question and cannot be ejected. (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Hinkley* v. *State*, 234 N. Y. 309; *Matter of City of New York* [*West 205th St.*], 240 N. Y. 68; *White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65; *Matter of Del Balso Holding Corp.* v. *McKenzie*, 271 N. Y. 313; *City of New York* v. *Swift & Co.*, 162 Misc. Rep. 581; *Burns Bros.* v. *City of New York*, 178 App. Div. 615; 232 N. Y. 523.) Plaintiff failed to prove its claim of title. (*Beers* v. *Hotchkiss*, 256 N. Y. 41; *Jarvis* v. *Lynch*, 157 N. Y. 445; *People* v. *Inman*, 197 N. Y. 200; *Shinnecock Hills & Peconic Bay Realty Co.* v. *Aldrich*, 132 App. Div. 118; 200 N. Y. 533; *Maier* v. *Joslin*, 46 Minn. 228; *Oakes* v. *DeLancey*, 133 N. Y. 227.) The plaintiff's muniments of title fail to locate the property with sufficient definiteness to entitle it to a judgment in ejectment. (*Jarvis* v. *Lynch*, 157 N. Y. 445.) Plaintiff's map exhibits were erroneously admitted in evidence. (*Scholle* v.

*Mayor*, 25 N. Y. St. Rep. 847; 119 N. Y. 613; *Webber* v. *Gillies*, 112 N. Y. Supp. 397.)

*William C. Chanler, Corporation Counsel* (*William S. Gaud, Jr.*, and *Arthur Bruan* of counsel), for respondent. The property is filled land under water, record title to which is in the city. (*People ex rel. Blakeslee* v. *Commissioners*, 135 N. Y. 447; *Hinkley* v. *State*, 234 N. Y. 309; *Saunders* v. *N. Y. C. & H. R. R. R. Co.*, 144 N. Y. 75; *Harway Improvement Co.* v. *Partridge*, 203 App. Div. 174; 236 N. Y. 563; *Pope* v. *Hanmer*, 74 N. Y. 240; *Voight* v. *Meyer*, 42 App. Div. 350; *Sage* v. *Mayor*, 154 N. Y. 61; *Williams* v. *Mayor*, 105 N. Y. 419.) The defendant has not proved title to the property through adverse possession. (*Hinkley* v. *State*, 234 N. Y. 309; *Heller* v. *Cohen*, 154 N. Y. 299; *Belotti* v. *Bickhardt*, 228 N. Y. 296; *Rathbunville Union Cemetery Assn.* v. *Betson*, 208 N. Y. 364; *Kneller* v. *Lang*, 137 N. Y. 589; *St. Vincent Female Orphan Asylum* v. *City of Troy*, 76 N. Y. 108; *Burbank* v. *Fay*, 65 N. Y. 57; *Slingerland* v. *International Contracting Co.*, 169 N. Y. 60; *Knickerbocker Ice Co.* v. *Shultz*, 116 N. Y. 382; *People* v. *Baldwin*, 197 App. Div. 285; 233 N. Y. 672; *People* v. *Shipley*, 229 App. Div. 21; *Kingsland* v. *Mayor*, 110 N. Y. 569; *Matter of City of New York* [*Piers Old Nos. 8–11*], 228 N. Y. 140; *American Ice Co.* v. *City of New York*, 217 N. Y. 402; *Matter of Mayor*, 135 N. Y. 253; *Langdon* v. *Mayor*, 133 N. Y. 628; *Grimmer* v. *Tenement House Department*, 204 N. Y. 370; *City of New York* v. *New York City Ry. Co.*, 193 N. Y. 543; *Adamson* v. *Schreiner*, 176 App. Div. 95; *Harway Improvement Co.* v. *Partridge*, 203 App. Div. 174; 236 N. Y. 563; *Consolidated Ice Co.* v. *Mayor*, 166 N. Y. 92; *New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *New York Telephone Co.* v. *Board of Education*, 270 N. Y. 111.) The defendant has no riparian rights which bar a possessory judgment in favor of the city. (*Hinkley* v. *State*, 234 N. Y. 309; *Whiting* v. *Edmunds*, 94 N. Y. 309; *Bedlow* v. *New York Floating Drydock Co.*, 112 N. Y. 263; *Bradt* v. *Church*, 110 N. Y. 537; *Gates & Co.* v. *City of*

*New York*, 259 N. Y. 534; *Town of Brookhaven* v. *Smith*, 188 N. Y. 74; *Thousand Island Steamboat Co.* v. *Visger*, 179 N. Y. 206.)

FINCH, J.  This is an action in ejectment brought by the city of New York.  The city alleges that it is the owner in fee simple and entitled to immediate possession of all the property within the block bounded by Forty-fifth street, Forty-sixth street, First avenue and East river to the extent that it lies outshore of the "original high water line of the East River."  Judgment was demanded for the possession of the property and for the value of its use and occupation from 1926.  The answer denied the material allegations of the complaint, set forth defenses of adverse possession and the Statute of Limitations, the exercise of riparian rights, and, with respect to the claim for damages, the six-year Statute of Limitations.

This action was tried previously, before Mr. Justice CHURCH without a jury.  At the close of the trial he entered judgment for the plaintiff declaring it to be the owner of the property and awarded the city damages of approximately two hundred and fifty thousand dollars. The Appellate Division reversed and granted a new trial upon the ground that the defendant had been wrongfully deprived of its right to a jury trial (249 App. Div. 391). At the close of this jury trial, three questions were submitted to the jury which it answered as follows:

" I. Who has the title in fee of the property in suit, plaintiff or defendant?  Answer:  Plaintiff.

" II. If you have answered the first question in favor of the plaintiff, which line on Plaintiff's Exhibit 32 indicates the original mean high water mark of the East River? Answer:  The original mean high water line as claimed by the City of New York, indicated by the red line on Plaintiff's Exhibit 62.

" III. If you answer the first question in favor of the plaintiff, what, if anything, is the amount of damages

the plaintiff is entitled to recover as damages for the use and occupation of the premises in question for the period from August 1st, 1928 to March 1st, 1937? Answer: None."

The Appellate Division, one justice dissenting, affirmed the judgment entered on the verdict of the jury.

The property involved is now covered by substantial brick buildings used for slaughtering and dressing meat, and by a pier bulkhead and platform along the water.

In view of the affirmance by the Appellate Division we must affirm unless there is no evidence to sustain the verdict of the jury or unless there are errors of law in the charge or in the refusal to dismiss the complaint.

The city maintains that the property involved is filled in land formerly under water and that it has title to such land under water or formerly under water.

### 1. TITLE OF THE CITY.

All the land around Manhattan between the low-water mark and the high-water mark was granted to the city in 1686 by the Dongan Charter. The title thereby obtained was subsequently ratified by the Montgomerie Charter of 1730 and by the several Constitutions of the State. In short we may assume that the colonial charters and State grants gave title to all land under water to the city. The city's title to these several grants has been considered at length in *Sage* v. *Mayor* (154 N. Y. 61, 70, 81).

The defendant attempted to show that the property involved in the case at bar had been granted by one Kieft, Director General, to George Homs and another, prior to the Dongan Charter. A reading of the grant by Kieft, however, shows that it did not include land under water. That grant covers " * * * a certain piece of land lying on the island of Manhattans extending in breadth from Teutel bay along the East river till to the Kill of Schepmoes where the Beach tree lies over the water and then in its length from the said River straight into the woods and of the same breadth

all along the water one hundred rods (of Thirteen feet to the rod) * * *."

This language obviously does not include land under water. *First*, the description of the property is "land lying on the island of Manhattans" — not land under water; *secondly*, the property is described as extending from "Teutel bay." Turtle bay (spelled Teutel bay in the grant) was an indentation two city blocks in length and the grant extended *from* Turtle bay and did not include Turtle bay. Finally the property granted is said to stretch along the East river and along the water and it is well settled that when lands are described in a deed or grant as being bounded by a tidal river the title ends at the high-water mark. (*Sage* v. *Mayor*, 154 N. Y. 61, 69, 70.)

In the absence of proof to the contrary it must be presumed that this land under water was conveyed as part of the Dongan grant. The city's claim of title to land under water from the time of the Dongan grant to the present is clear. Thus the city had title to the land under water at the time of the Dongan grant and still has such title unless title has been conveyed or lost by adverse possession.

Before taking up the question of conveyance or adverse possession, it is necessary to determine whether the land involved was land under water. The record contains much evidence showing that there has been extensive filling in along the waterfront. The evidence concerning the precise extent of this filling is conflicting. The jury has found that the original high-water mark is shown by the red line on the map identified as Exhibit 62.

This finding concerning the original high-water mark and the effect and the extent of the filling is binding unless all evidence is lacking to support it. Examination shows ample evidence in support of this finding. The red line of Exhibit 62 is identical with the high-water line shown on the Turtle bay farm map of 1835. This

map was filed in the New York County Registrar's office in 1835 and is peculiarly relevant to this controversy. It is admitted that the defendant owned the upland above the high-water mark and we find that the earliest deed of the defendant's claim of title in evidence on this trial refers to the property conveyed as being a part of a piece of land known as Turtle bay farm. Like references are found in most of the record deeds introduced by the defendant. There are two other maps introduced by the defendant, showing lines which apparently represent the high-water line and these lines coincide almost exactly with the red line of Exhibit 62. Furthermore there are specific descriptions contained in the defendant's deeds describing that part of the Turtle bay farm conveyed as extending along the shore of the East river. When these locations are plotted (using the specific measurements contained in the deeds) the shore line referred to in the deeds as a boundary accords with the line fixed by the jury. In addition numerous other maps were introduced by the city to support its contention that the original high-water line was well inshore of the present line.

The defendant insists that these maps were improperly admitted. Under sections 389, 389-a of the Civil Practice Act, however, such maps are made admissible where they have been filed for more than twenty years and are made presumptive evidence of their contents.

2. THE RIGHT OF THE CITY TO BRING THIS ACTION.

It is argued that under section 34 of the Civil Practice Act the city cannot maintain an action to recover real property unless it " was seized or possessed of the premises in question within fifteen years before the commencement of the action." This overlooks section 35 of the Civil Practice Act which provides that " the person who establishes a legal title to the premises is presumed to have been possessed thereof within the time required by law," and that the occupation by another person is deemed to have been under and in subordination to this legal title unless

such other person has held possession of the premises adversely for fifteen years before the commencement of the action. Since the city has legal record title to these premises, it may maintain this action unless the defendant can show that it has had adverse possession for the required period.

3. THE ADVERSE POSSESSION OF THE DEFENDANT.

The question of adverse possession must be divided into two periods of time — the period before 1871 and the time thereafter. The city contends that by statute enacted in 1871 the land under water became inalienable and, therefore, the adverse possession, if the claim is to be sustained, must be shown to have existed prior to 1871.

The defendant's proof of adverse possession consisted of the testimony of living witnesses and documentary proof. None of the living witnesses recalled the period prior to 1873. Therefore, proof of possession prior to 1871 must rest on the documentary evidence. This evidence in so far as it antedates 1871 consists of (1) an application to the Building Department in 1868 for a permit to construct a building, (2) evidence that taxes were paid on this land from 1860 to 1875, and (3) certain leases commencing in 1865.

The application for the permit to erect a building has little value, if any, in proving adverse possession. Any person whether he be fee owner or lessee or licensee of the city must obtain a permit before erecting a building or waterfront structure. Nor is it material that he states wrongfully that he is the owner of the premises in his application, since the jurisdiction of the Building Department does not extend to the examination of titles. Likewise proof of payment of taxes is not conclusive proof of adverse possession nor is it binding on the city (*Consolidated Ice Co.* v. *Mayor*, 166 N. Y. 92, 101; *Harway Improvement Co.* v. *Partridge*, 203 App. Div. 174, 178; affd., 236 N. Y. 563), although payment of taxes if coupled with other acts may constitute some evidence of hostile

possession. (See *People* v. *Ladew*, 237 N. Y. 413, 425.) Moreover, statements of city officials do not estop the city and, therefore, cannot constitute conclusive evidence of adverse possession. (*New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *New York Tel. Co.* v. *Bd. of Education*, 270 N. Y. 111.)

This brings us to the question of leases. Most of the leases referred to obviously related to upland and not to land under water. Of the two leases which, because of the vagueness of the description, might be urged as applying to the *locus in quo*, we have in the first an express reservation of all the right, title and interest of the city in and to the land lying below the high-water mark in the East river. The second of these leases does not cover the same property as the first. Just what property it does cover is by no means clear by reason of the vagueness of the description. A complete answer to the contention based upon this lease is that, owing to the vagueness of the description, the location of the property covered by the lease presented a question of fact for the jury to decide, and its decision on this issue cannot be disturbed.

From the above it seems clear that the defendant did not offer proof which would permit us to find as a matter of law that a predecessor in title had adverse possession prior to the year 1871. Some evidence of such adverse possession there was, but the question was properly left to the jury, which has found against the defendant.

A great deal of evidence tending to show adverse possession subsequent to 1871 is to be found in the record. This includes testimony of living witnesses that the defendant or predecessors in title were in actual possession from 1873 to date and much documentary evidence. This evidence was sufficient to raise a question for the jury and might even be sufficient to justify a determination of adverse possession as a matter of law, if the property was alienable. The question however, was not submitted to the jury, on the ground

that after the year 1871 there could be no adverse possession of this property.

This raises the most important question in the case. Did the legislation of 1871 and 1873 make this property inalienable and, therefore, prevent the defendant from obtaining title by adverse possession?

As already shown, there was ample evidence to sustain the finding of the jury that this property originally was land under water.

Land originally under water is treated as land under water even after it is filled. (*People ex rel. Blakslee* v. *Commissioners of Land Office*, 135 N. Y. 447, 450; *Hinkley* v. *State*, 234 N. Y. 309, 319.) When property of the State or city is inalienable, title cannot be obtained by adverse possession. (*Burbank* v. *Fay*, 65 N. Y. 57, 66; *Hinkley* v. *State*, 234 N. Y. 309, 315; *Knickerbocker Ice Co.* v. *Shultz*, 116 N. Y. 382, 388.) The theory upon which this decision rests has been well expressed in the *Burbank* case where we said: " the whole theory of prescription depends upon a supposed grant. No such grant can be presumed where a grant would be unlawful or contrary to law * * * where no express grant can be allowed, the law will not resort to the fiction of an implied grant so as to create a prescriptive right. If it would, the whole policy of the prohibitory statute might be subverted by the supineness or willful fraud of public officers, and the State deprived of most important rights." (*Burbank* v. *Fay*, 65 N. Y. 57, 66, 67.)

This brings us to the question whether chapter 574 of the Laws of 1871 made land under water inalienable. This statute authorized the Department of Docks to lease the city's waterfront only for a period of ten years. It specifically provided that the " terms ' property ' and ' wharf property,' whenever used therein, shall be taken to mean not only all wharves, piers, docks, bulkheads, *slips*, and *basins*, but the land beneath the same, and all rights, privileges, and easements thereto." (§ 6 [§ 99, subd. 12].) (Italics interpolated.)

Two years later another statute was enacted which provided among other things that the Commissioners of the Sinking Fund might sell any city property "except wharves and piers." (Laws 1873, ch. 335, § 102.) Significantly this later statute, though repealing a great many earlier statutes, expressly saved from repeal section 6 of the act of 1871 which gave the Department of Docks the powers referred to above and defined property and wharf property as including land under water.

This section 6 also specifically provided that the Department of Docks in the city of New York shall have exclusive charge and control, subject to certain rights of the Commissioners of the Sinking Fund, not only of all wharves, piers, bulkheads, structures and waters adjacent thereto, but also all slips, basins, docks, waterfronts, land under water, and structures thereon. In addition the Department of Docks was directed to make a sole plan for solid filling of the waters surrounding the city and for extending piers into the waters and erecting bulkheads, and said Department of Docks was authorized to acquire in the name and for the benefit of the city, any and all wharf property in the city to which the corporation of the city then had no right or title.

In *Matter of City of New York* (*Piers Old Nos. 8–11*) (228 N. Y. 140), the court said that this chapter 574 of the Laws of 1871 and chapter 335 of the Laws of 1873 have been held by the courts to recognize and affirm the purposes of the Legislature to make the property of the city constituting its waterfront inalienable. This case also reviews the other cases, reaching a like result. It refers to *Kingsland* v. *Mayor* (110 N. Y. 569) where the court, referring to chapter 574 of the Laws of 1871, says: " The city charter of the previous year was amended so as to change the whole dock system of the harbor. The law provided for a plan which should girdle the city with new wharves and piers, belonging wholly to the municipality, and ending all private ownerships along the waterfront. The wharves of private owners were to be pur-

chased by agreement, or taken in the ordinary manner by proceedings under the right of eminent domain " (p. 578). In *Williams* v. *Mayor* (105 N. Y. 419), the court, referring to the act of 1871, says: "* * * and the old plan of wharves and piers owned by individuals is to be swept away" (p. 437). In *Langdon* v. *Mayor* (133 N. Y. 628) the court said: " The Legislature * * * by the enactment of chapter 574 of the Laws of 1871, inaugurated a radical and sweeping change of policy upon the subject. Private ownership of wharves and wharfage rights were from that time subjected to a process of extinction " (p. 635). The court, after discussing these cases, reached the conclusion: " The courts at different times have recognized and affirmed that the purpose of the legislatures of 1871 and since has been to make the property of the city constituting its waterfront inalienable." (*Matter of City of New York [Piers Old Nos. 8–11]*, 228 N. Y. 140, 150.) While it may be possible to confine this case in its actual decision to the question of whether piers and wharves rather than land under water were inalienable, it is very clear from a reading of the opinion that when the court construed the statutes of 1871 and 1873, it was construing them not in terms of their application to piers and wharves alone, but their intent and purpose as a whole. In view of the manifest intent shown when chapter 574 of the Laws of 1871 is read in its entirety and the adoption of this intent by this court in the numerous cases indicated, which holds land under water as well as the piers and wharves inalienable from 1871 on, we are not bound by the reports of an engineer in the Dock Department of the City of New York in 1922, or of the Corporation Counsel in 1910 to the effect that the defendant had acquired adverse possession. Nor are we bound by the fact, that subsequent to 1871, the city made a number of grants of land under water. The city is not estopped from asserting its rights by these inconsistent acts, since the errors of law of city employees and officers are not

binding upon the city. (*New York City Employees'*
*Retirement System* v. *Eliot, supra; New York Tel. Co.* v.
*Bd. of Education, supra.*)

### 4. CHARGE TO THE JURY.

After the court had fully charged the jury concerning
adverse possession it granted a request of the plaintiff to
charge that mere lapse of time furnished no defense for
encroachment of a public right and that the jury should
not consider that the city had lost any rights because
its public officers sat by and failed to exercise due diligence.
The appellant contends that this was equivalent to taking
the question of adverse possession out of the case entirely.
A reading of the entire charge to the jury and the requests
to charge shows that the only impression this could have
made on the jury was that intended by the court, that
is, that the defendant could acquire title by adverse
possession if such adverse possession commenced prior to
1871, but that mere lapse of time during which the
officials of the city failed to take action did not estop
the city from asserting its rights and did not take the place
of proof of an adverse possession prior to 1871.

### 5. RIPARIAN RIGHTS OF THE DEFENDANT.

The defendant contends that the judgment giving
possession of the property to the city is erroneous in
that it disregards defendant's riparian rights. Riparian
rights are rights of navigation, boating, fishing and the
like, including the right of access to the water for such
purposes.

We thus come to the question of the pier and the
platform of piles which is located outshore of the present
high-water mark.

Since 1907 the defendant has occupied a pier under
leases and permits granted by the Dock Department
and has paid rent to the city for this privilege. The
term of the last of these leases and permits expired in
1925. In these instruments the defendant acknowledged
the city's right to possession. This alone may prevent
the defendant from claiming access to this pier.

In addition under section 41 of the Civil Practice Act, where there has existed a relationship of landlord and tenant and there has been no surrender of possession, the possession of the tenant is deemed the possession of the landlord until the expiration of fifteen years after the last payment of rent. In a somewhat similar case we affirmed a dismissal of the complaint on the ground that the lessee is estopped from challenging the city's title. (*Gates & Co.* v. *City of New York*, 259 N. Y. 534.)

Nevertheless the defendant contends that as owner of the upland it is entitled to riparian rights which include the right to erect and maintain wharves and piers. This is the general rule, but it is subject to a well-recognized exception that where the land has been appropriated to some public use, the riparian rights of the upland owner may be restricted. (*Trustees of Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 87.)

In *Matter of Del Balso Holding Corp.* v. *McKenzie* (271 N. Y. 313) this court said: " If the petitioner is an upland owner, it has the well-settled riparian right of access by means of a pier to navigable water in front of its upland, subject to the rights of the public " (p. 316). Thus the defendant, as the owner of the original upland, has riparian rights of access to navigable water in front of its original upland. Referring to riparian rights, this court, in *Matter of City of New York* (*West 205th Street*) (240 N. Y. 68), said: " In general terms they connote the right and profit to the owner of the upland arising from its connection with the water, such as the easements of passage and use, subject, however, to governmental regulation for the improvement of navigation [citing cases]. They are not dependent upon ownership of the shore and are the same whether or not the riparian owner owns the soil under water " (p. 72).

Such riparian rights may not be impaired by reason of an illegal fill extending beyond the upland ownership. (*Tiffany* v. *Town of Oyster Bay*, 234 N. Y. 15.)

It may well be that the defendant has no right to use this pier on piles which it had leased if there remains otherwise available to this defendant such access to navigable water, and it would seem from the photographs and exhibits in the case at bar that there is plenty of room for such access outside of this pier. Accordingly the mere leasing of this pier by the defendant from the city would not abrogate the riparian rights of this defendant. Because the defendant sought to increase its rights by the lease of this pier, no valid reason appears why this should be held to cancel the riparian right of access which it already had. Evidently, what it was endeavoring to do was to increase its riparian rights, and not to lose what it had. If the city desires to abrogate this riparian right to reach navigable water belonging to defendant as the owner of the original upland, the city would have to take the same in condemnation for just compensation.

The city further contends that because, by the enactment of chapter 574 of the Laws of 1871 and chapter 335 of the Laws of 1873, heretofore referred to, the Legislature has made this land inalienable, therefore this waterfront has been dedicated wholly to the public and the riparian right of access belonging to this defendant has been thereby abrogated. To sustain its contention the city cites *Trustees of Town of Brookhaven* v. *Smith* (188 N. Y. 74), where Judge GRAY, writing for the court, said: " The right of access is conceded to be a valuable one and, unless the foreshore has been appropriated by the general government to some superior, and lawful, public use, as for example, by a grant to a municipality, or for navigation purposes, it is entitled to the protection of the law " (p. 87). This contention of the city is likewise without merit. Chapter 574 of the Laws of 1871 made explicit provision for the Department of Docks to acquire rights not then owned by the city either by purchase or condemnation. This defendant, through its predecessors, as the owner of the upland, owned also this valuable right of access at that time. It was not possible then or now for the

Legislature or the city to deprive this defendant of this valuable right save for just compensation in condemnation. The city admits that twice this court has sustained the right of an upland owner to maintain a pier outshore of an illegal fill extending beyond his upland ownership, citing *Tiffany* v. *Town of Oyster Bay* (234 N. Y. 15) and *Harway Improvement Co.* v. *Partridge* (203 App. Div. 174; affd., 236 N. Y. 563), but seeks without avail to distinguish these cases. It follows that the defendant is still possessed, as the owner of the original upland, of riparian rights which entitle it to access to navigable water.

We conclude, therefore, that the court properly charged the jury on the question of the location of the mean high-water mark line, adverse possession and the effect of the statutes of 1871 and 1873. The jury returned a verdict in favor of the city, which on all points is supported by ample evidence. The Appellate Division having affirmed, we cannot disturb this judgment except for errors of law. The only error of law is the failure to recognize that this defendant, being concededly the owner of the original upland, still owns a right of access to navigable water with the right to maintain a pier for this purpose if desired. As already noted, the plaintiff is entitled on the merits to an affirmance of the judgment appealed from except for the right of reasonable access to navigable water remaining in the defendant. The judgment appealed from is modified so that nothing contained therein shall be construed to abrogate the right of the defendant, as owner of the original upland, to have access to navigable water.

The judgments should be modified in accordance with this opinion and as so modified affirmed, without costs. (See 278 N. Y. 702.)

CRANE, Ch. J., O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur; LEHMAN, J., dissents on the ground that the defendant proved as a matter of law adverse possession beginning before 1871.

Judgment accordingly.