In the Matter of SAUL C. COHEN, Petitioner, against WILLIAM J. HEFFERNAN et al., Constituting the Board of Elections of the City of New York, et al., Respondents.

Supreme Court, Special Term, Kings County, July 30, 1946.

*Abraham J. Multer* for petitioner.

*John J. Bennett, Corporation Counsel (Russell L. Tarbox* of counsel), for William J. Heffernan and others, constituting the Board of Elections of the City of New York, respondents.

*Morris E. Packer* for Maurice E. Biederman, respondent.

LIVINGSTON, J. Petitioner moves for an order canceling the enrollment of the respondent, Biederman, in the Democratic Party and declaring null and void a transfer of enrollment attempted to be made by him. Section 332 (subd. 1) of the Election Law prescribes that upon timely application " by a duly enrolled voter of a party " such enrollment must be cancelled for the reason (among others specified) that the voter " does not reside in the election district."

Many of the important facts herein are undisputed. Respondent Biederman (to whom reference alone will be made by such term, the four members of the Board of Elections having appeared by attorney and taken a neutral attitude) admittedly, on October 8, 1945, registered and enrolled in the 16th Election District of the 18th Assembly District, although at that time he resided at 750 Lefferts Avenue, Brooklyn, which address was not within such district but in the adjoining 37th Election District. If his attempt to transfer such enrollment in the manner hereinafter described failed in its purpose, petitioner's application must, of necessity, be granted, for in such event, it would follow that respondent is still enrolled as a party member in the 16th Election District and that he is not a resident thereof. If, on the other hand, the transfer was effective, petitioner must fail, for respondent would be enrolled in the district in which he, in fact, resides.

It is the contention of the respondent that he was misled by " casual " reference to a Board of Elections' map (respondents' Exhibit A). The Lefferts Avenue terminal number at Troy Avenue is improperly indicated thereon as " 780 " instead of " 706 ". The figures " 780 " are in very small type. More apparent than these numbers and in clearer type, are the correct street designations bounding the block on which respondent resided. Still more apparent than these is a color scheme (green) setting off the entire election district as reconstituted for the 1945 registration. More apparent than all of these is the change in the physical contour of the districts in question which could hardly pass unnoticed by one with experience in such matters.

Respondent was at the time and had been for several years the Democratic Party captain of the 16th Election District and, according to his own testimony, spent most of his time on the day in question at the registration place. Such place of registration was a public school in which also were located the place of registration for the 37th Election District and several others. Respondent admitted that he discovered his mistake some time later the same day and confirmed it by a more careful examination of the same map. As evidence of the truth of his claim, respondent cites the fact that he thereafter instructed members of his family to register and enroll in the 37th Election District, which they did. He further says he thereupon sought to have the inspectors of election in the 16th Election District give him permission to correct it, but they refused, telling him he would have to apply to the Board of Elections, as did the inspectors of the 37th Election District. Three of the four members of the board from the 37th Election District called as witnesses by petitioner, including one of the Republican members of such board, denied this and no testimony was adduced by respondent in confirmation of his claim. On the contrary, it was established by record proof that the inspectors of the 16th Election District had actually permitted two voters to cancel their registration and later register in the correct district, one of these being a Republican member of the board itself. According to the testimony given by the Assistant Corporation Counsel who appeared for the Board of Elections herein, Mr. Tarbox, who was called to the stand and questioned as a witness for respondent. Biederman, such practice is accepted by the Board of Elections and is commonly permitted by the registry boards if done at the time of the original registration. It was testified further by the Democratic cocaptain of the adjoining 37th Election District that respondent admitted to him " that he had already registered in the 16th and that he was going to vote from the 16th Election District " as he, in fact, did. Even conceding the possibility of mistake in his initial act of registration there was no possibility of mistake when respondent, several weeks thereafter, cast his vote at the general election from a district of which he knowingly was not a resident.

Respondent offered no explanation for his failure to seek a correction of the situation for a period of almost six months, when he presented himself at the Brooklyn office of the Board of Elections, consulted several of its clerks, and filed an affidavit on a form presented by them requiring " that my enrollment

be transferred as provided by Section 184, Subdivision 2 of the Election Law, as amended.'' Such section permits of a transfer, under certain conditions, where there has been a change of address. Respondent asserts that he called to the attention of the clerks the fact that there had been no change of address and that therefore the section was inapplicable. His testimony continued: '' They said, ' Well, you can fix that up ', whereupon I struck out those parts of the affidavit that related to moving from one place to another and in my handwriting wrote in, ' This was an error. I belong in the 37th,' whereupon a notary public attached to the office administered the oath and I signed it.

'' They thereupon struck out my registration and enrolment from the 16th and wrote in the information on the 37th book, and that was all there was to it.''

It is contended by counsel for petitioner and conceded by counsel for respondent that (although the actions of the Board of Elections are controlled by statute) '' there is no specific statutory provision applicable to the facts at bar ''.

Section 184, under which respondent sought to proceed, provides as heretofore pointed out, for a transfer of enrollment where there has been a removal, and here there was none.

Section 174 provides for a '' Change of registry where voter registered in wrong district.'' If this section might be interpreted so as to cover the predicament in which respondent was placed, it would have been required of him to have followed the procedure therein specified and to which the witness from the Board of Elections testified at the hearing. Application would have had to be made on a special form (not the one used herein); checkup of the statements made would thereafter follow by the Board of Elections and the police; the county chairmen of the three major political parties would have had to be notified; and the two boards of inspectors reconvened, the one to cancel the erroneous registration, and the other to enter the correct one.

It should be noted, at this point, that respondent, even conceding that his act was induced without fault on his part, was not left without remedy. By proper invocation of, and compliance with, the provisions of section 174, for one thing, he could have effected a change of registration, which change would have carried with it as a necessary corollary, the entry of his enrollment, as well, in the new district.

None of such precautions, so carefully laid down as a public safeguard, was followed; no checkup was made; no notice was

given to the chairmen of the county committees; and the transfer and change was made, not by the inspectors of elections, but by a clerk in the Board of Elections. The procedure pursued by respondent was not authorized or permitted by any provision of the Election Law and must be regarded as a complete nullity. (See *Matter of Lieblich* v. *Cohen,* 286 N. Y. 559; *Matter of Cavallaro* v. *Cohen,* 293 N. Y. 741.) Nor may respondent seek legal sanction for the course followed by him by claiming reliance on instructions of the Board of Elections, or fortify his position under any theory of estoppel. (Cf. *Peterson* v. *Mayor of New York,* 17 N. Y. 449, 454; *Seif* v. *City of Long Beach,* 286 N. Y. 382, 387; *City of New York* v. *Wilson & Co.,* 278 N. Y. 86, 99; *Oakhill Contracting Co.* v. *City of New York,* 262 App. Div. 530, 533.)

It follows, therefore, that no transfer of enrollment was effected in accordance with any statute governing same.

The provisions of section 332 of the Election Law are specific, mandatory and controlling. They permit of no resort to equitable doctrines, even though warranted. The court is clothed with no power of "liberal construction" as in proceedings entrusted to its summary jurisdiction under section 330 (*Matter of Holley* [*Rittenberg*], 268 N. Y. 484, 487).

The Board of Elections itself, acting as a board, much less its employees or clerks, is without power to alter, supplement or amend the Election Law in the absence of express permission therein given. As stated in *Matter of Childs* v. *Cohen* (N. Y. L. J., Aug. 4, 1944, p. 223 col. 1): "The Board of Elections has no authority to disregard the statute * * *. The board lacks the jurisdiction to do what the Legislature failed to do." (See, also, *Matter of Greenman* v. *Cohen,* 185 Misc. 349, 350.) Moreover, it clearly appears, that the authority of the Board of Elections was never even invoked. The board, as such, never acted in the matter since it was never brought before it officially. It cannot be bound by the acts or advice of its subordinate clerks.

Respondent has urged repeatedly that petitioner has ulterior motives in seeking the granting of this application; that the ultimate end sought by petitioner is to eliminate respondent as a candidate for State Committeeman in the 18th Assembly District; that the court by granting this application would defeat the desires and wishes of many enrolled voters in the said assembly district who would thus be deprived of the opportunity of supporting respondent for that party position. If that be the eventual result it will indeed be unfortunate but,

in the last analysis it stems from the fault of the respondent. He may not shift the onus thereof to the court which is without power to proceed except within the language of the statute as enacted by the Legislature.

Order for relief as prayed for is granted, accordingly. Submit order.