In the Matter of PRESIDENT SELF SERVICE, INC., Respondent, against AFFILIATED RESTAURATEURS, INC., et al., Appellants.

Argued April 4, 1939; decided May 23, 1939.

*Louis Shapiro* and *Joseph G. Gubman* for Affiliated Restaurateurs, Inc., et al., appellants. A *bona fide* controversy or dispute exists between the parties. (*Matter of Wenger & Co.* v. *Propper Silk Hosiery Mills, Inc.*, 239 N. Y. 199.) The parties have contracted to submit the dispute or controversy to arbitration. (*Itoh & Co.* v. *Boyer Oil Co.*, 198 App. Div. 881.) The dispute or controversy is subject to arbitration.

*Louis B. Boudin* for Cafeteria Employees Union, Local No. 302, appellant. The Appellate Division was in error as to the nature of the proceeding as well as to the nature of the questions before it. (*Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Kanter* v. *Blum Co.*, 144 Misc. Rep. 602.) An arbitrable question exists. (*Matter of Kelley*, 240 N. Y. 74.) The order appealed from is one which finally determines a special proceeding within the meaning of section 588 of the Civil Practice Act, and is appealable as of right. (*Matter of Red Cross Line* v. *Atlantic Fruit Co.*, 233 N. Y. 373; *Matter of Hosiery Mfg. Corp.* v. v. *Goldston*, 238 N. Y. 22; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Van Arsdale* v. *King*, 155 N. Y. 325.)

*Allan R. Campbell, Frank R. Bruce* and *Julius J. Rosenberg* for respondent. The Appellate Division rightly held that the Cortlandt Cafeteria was not touched by the union contract. (*Pullman's Palace Car Co.* v. *Missouri Pacific Co.*, 115 U. S. 587; *Peterson* v. *Chicago Ry. Co.*, 205 U. S. 364; *Berkey* v. *Third Ave. Ry. Co.*, 244 N. Y. 84; *Elenkrieg* v. *Siebrecht*, 238 N. Y. 254.) The contract, properly construed, does not authorize arbitration. (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130; *Matter of Kelley*, 240 N. Y. 74; *Matter of General Silk Importing Co.*, 200 App. Div. 786; 234 N. Y. 513; *Fleischman* v. *Furgueson*, 223 N. Y. 235; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215; *Ayers* v. *Order of United Workmen*, 188 N. Y. 280; *Steuernagel* v. *Supreme Council of R. A.*, 234 N. Y. 251.)

CRANE, Ch. J. President Self Service, Inc., is a New York corporation owning and operating a cafeteria at 110 West Forty-second street, Manhattan, known under the trade name of "42nd Street Cafeteria." Cortlandt Cafeteria, Inc., is a New York corporation operating a cafeteria at 20 Cortlandt street, Manhattan, known as "Cortlandt Cafeteria." It is claimed that the stockholdings of President Self Service, Inc., and of the Cortlandt Cafeteria, Inc., are substantially the same; that at least eighty per cent of the stock is held by the same parties in both corporations; that the directors are substantially the same; and that the operation of both stores is under interlocking management. The petitioner herein denies part of this claim, but admits that five stockholders of the petitioner are stockholders of the Cortlandt and that there is only one other stockholder of Cortlandt, owning one-sixth of the stock. There are five directors in each corporation. Four of these directors are the same in each corporation. There are four officers of each corporation — president, vice-president, treasurer and secretary. Two of the officers of the petitioner are also officers of the Cortlandt.

Affiliated Restaurateurs, Inc., is an association of employers engaged in the business of conducting cafeterias. It is referred to throughout this case as "the association." On or about April 26, 1938, this association entered into a collective agreement with the respondent Cafeteria Employees Union Local No. 302, to which agreement President Self Service, Inc., together with other members of the association, was and is a party. This proceeding arises out of an interpretation of this agreement. Apparently the petitioner President Self Service, Inc., employs union labor. Cortlandt Cafeteria, Inc., does not. The association and the Union Local No. 302 insist that the petitioner controls Cortlandt Cafeteria and that the agreement extends to it. The petitioner insists that the agreement binds the 42nd Street Cafeteria but does not cover the Cortlandt Cafeteria. This dispute the association and the union desire to submit to arbitration and have taken steps accordingly. The

petitioner has sought an injunction to restrain such action, and the Appellate Division, by a divided court, has granted the motion upon the ground that the affidavits do not show that the Cortlandt Cafeteria is owned, operated and controlled, directly or indirectly, by the respondent.

The question presented on this appeal is not whether such be the fact but whether this dispute or disagreement regarding such ownership or control is one which should be submitted to arbitration and for the arbiters to decide, not the courts. We, therefore, turn to the agreement which, like every other agreement or contract, is supposed to be binding upon the parties. In other words, has the petitioner agreed with the association and the union that any dispute arising as to ownership or control " directly or indirectly " shall be submitted to arbitration? The wording of the agreement settles the question.

The agreement is dated the 26th day of April, 1938, between Affiliated Restaurateurs, Inc., and Cafeteria Employees Union Local No. 302, to which agreement the petitioner alleges that it is a party. Paragraph " 2 " thereof reads as follows:

" 2. It is hereby agreed that no Employer who is a member of the Association shall employ in any Cafeteria establishment owned, operated or controlled, directly or indirectly, by said Employer, any but union members in good standing. And it is further agreed that the only persons who shall be permitted to work in any of the crafts enumerated herein are to be Union members in good standing. * * *.

" 3. There shall be no strike or lockout during the life of this contract except for the failure of either party or an Employer to obey the decision of the Board of Adjustment as hereinafter more specifically provided for."

The hours and conditions of work, the manner of dress, the time for meals and the quality of food furnished employees and the classification of skilled and unskilled workers, the proceedings relating to absence and discharge and other details are all provided for in this agreement. A Board of Adjustment is to settle disputes arising out of

this agreement. Paragraph " 13," subdivisions (a) and (b), reads as follows:

" (a) The Board of Adjustment shall consist of two representatives of the Union and two representatives of the Association. If they cannot agree then they shall choose a fifth and impartial person to act as chairman of the said Board of Adjustment. If they cannot agree as to who the fifth person shall be, then the State Board of Mediation shall be called upon to appoint such an impartial chairman and such appointment shall be binding upon the parties hereto. If the said Board of Adjustment, including the impartial chairman, by a majority vote shall find that the worker was unjustly discharged, he shall be reinstated with or without pay as the Board may find proper in the circumstances. It is the intention of the parties hereto that the entire machinery of adjustment be set in motion as soon as is possible, so that the discharged employee will not suffer by any delay and for that purpose it is hereby agreed as follows:

" (b) That the Association shall within twenty-four (24) hours after receipt of notice by it from the Union that the employee challenges the discharge cause the Board of Adjustment to meet, and that at such meeting if they cannot agree between themselves and/or if they cannot agree as to the fifth and impartial chairman, then the State Board of Mediation shall be notified and a hearing shall be held by the Board of Adjustment on the entire matter as soon as possible. If any member of the Board of Adjustment is unable to attend the meeting he may be substituted by another person designated by the party to be represented and a statement by the other member of the Board of Adjustment representing the same party, that such substitution has been had, shall be sufficient for the purpose. *The Board of Adjustment shall decide any disputes that may arise under the terms of this agreement.* The Board of Adjustment shall keep records of the cases that come before it and each party shall be entitled to have in its own files a copy of the records of the Board." (Italics mine.)

That the jurisdiction of this Board is not limited to the matters specified in section " 13," relating to discharge of employees, is quite evident from the fact that other portions of the agreement, such as paragraph " 17," refer the matter of wage increase to this Board, together with the circulation of any black list by paragraph " 22," or the proper size of a crew for Saturdays, Sundays and holidays, referred to in paragraph " 25." We read paragraph " 13," subdivision (b), as referring to any disputes arising out of the terms of any part of the agreement. The words directly in point found there are these: " The Board of Adjustment shall decide any disputes that may arise under the terms of this agreement."

The petitioner admits that the paragraph requiring the employment of union labor is binding upon it and the " 42nd Street Cafeteria." It impliedly admits, and in fact must concede, that this paragraph is also binding upon the Cortlandt Street Cafeteria if it be " owned, operated or controlled, directly or indirectly " by the petitioner President Self Service, Inc. Does the petitioner, directly or indirectly, own or control or operate the Cortlandt Street Cafeteria? From the above statement regarding the stockholders, directors and officers of these two corporations a dispute has arisen over this question and the facts indicate that it is a *bona fide* dispute with some justification for the claims of the association and the union. Whether this be so or not, the agreement provides the machinery and the method for settling this dispute. It must be submitted as provided in the agreement to the Board of Adjustment. If this board does not determine the question fairly or the petitioner is not afforded an ample hearing or anything else of consequence goes wrong, then the petitioner may resort to the courts for relief, which will be afforded in a proper case. The granting of the injunction, therefore, was error.

An objection has been raised that the determination of the Appellate Division is not appealable to this court, reliance being placed upon *Matter of Arcadu* v. *Levinson* (250 N. Y. 355). This is not a motion in the arbitration

proceeding but is a separate and distinct special proceeding to stay arbitration, and the order is a final order in this proceeding. (See *Matter of Marchant* v. *Mead-Morrison Manufacturing Co.*, 252 N. Y. 284, 292; *Matter of Hosiery Manufacturers Corp.* v. *Goldston*, 238 N. Y. 22, 25, 26.)

The order of the Appellate Division should be reversed and that of the Special Term affirmed, with costs in this court and in the Appellate Division.

The motion to dismiss the appeal on the ground the order is not final should be denied.

LEHMAN, HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; O'BRIEN, J., taking no part.

Ordered accordingly.