In the Matter of LAWYERS MORTGAGE COMPANY.

TITLE GUARANTEE AND TRUST COMPANY, as Trustee, Appellant; LOUIS H. PINK, as Superintendent of Insurance of the State of New York, Respondent.

326

Argued November 14, 1940; decided December 31, 1940.

*Abraham Feinstein* for appellant.

*Daniel A. Dorsey* and *Edward F. Keenan* for respondent.

LEWIS, J.   We are to determine whether a charge made by the Mortgage Commission of the State of New York, to cover the cost of " servicing " a certificated mortgage during the period of rehabilitation of Lawyers Mortgage Company, was a violation of an order of Special Term which approved the plan of reorganization relating to that mortgage.

Prior to 1933, Lawyers Mortgage Company had issued and sold to the public a large number of guaranteed mortgage certificates secured by participations in mortgages upon real property in the metropolitan area of New York.   On

August 2, 1933, the company was placed in rehabilitation under the Superintendent of Insurance who administered the mortgages from August 2, 1933, until May 20, 1935. On May 21, 1935, the administration of such mortgages was turned over to the Mortgage Commission which was created by chapter 19 of the Laws of 1935. Among the mortgages thus administered by the Mortgage Commission we are concerned upon this appeal with only one — a mortgage designated as " No. 29,617," which was in the principal amount of $380,000 and was a lien upon a six-story, seventy-nine-family apartment at 40 Lincoln road in Brooklyn.

In September, 1935, the holders of more than fifteen per cent of the certificates participating in mortgage No. 29,617, presented to the Mortgage Commission a plan for reorganizing the mortgage under the provisions of the Schackno Act (L. 1933, ch. 745) and the Mortgage Commission Act (L. 1935, ch. 19). The mortgage was then in default and the fact becomes important that the Commission, through its predecessor, Lawyers Mortgage Company, had taken an assignment of rents from the owner of the mortgaged premises for the benefit of the certificate holders. In fact the Commission was then managing the apartment property under such assignment. It was in these circumstances that the plan for reorganizing mortgage No. 29,617 was proposed and ultimately received approval by Special Term by an order which contained the following provisions: " The party so servicing this mortgage shall be entitled to deduct from the interest payments collected one-quarter of one (¼ of 1%) per centum per annum of the principal amount of the mortgage as its service fee or charge. *There shall be no service charge to certificate holders on account of arrears of interest collected or paid under this plan.*" (Emphasis supplied.)

By the present proceeding Title Guarantee and Trust Company, as trustee of Series No. 29,617 of Lawyers Mortgage Company, seeks an order directing the Mortgage Commission, or its successor, to repay the sum of $2,774.75 which was deducted by the Commission from funds belong-

ing to the certificate holders and was paid to itself for " servicing " mortgage No. 29,617. The application by the trustee, which was granted at Special Term, was reversed by the Appellate Division which in turn denied the motion by the trustee for an order requiring repayment by the Commission of the " servicing " charge. The trustee has appealed to this court as of right.

At the outset we meet the respondent's challenge to our jurisdiction to entertain this appeal. It is said that the order from which appeal is taken is not final and that, in the absence of leave to appeal granted by the Appellate Division, as required by subdivision 4 of section 588 of the Civil Practice Act, the order may not be reviewed. This question requires for its answer a statement of additional facts.

In May, 1935, the Mortgage Commission took over from the Superintendent of Insurance more than seven thousand certificated mortgage issues of twenty-three title and mortgage companies then in rehabilitation or liquidation. In its relation to these mortgage issues — which, we are told, aggregated in principal approximately $680,000,000 — the Commission performed three functions: (1) *Servicing* — which included the collection of moneys due under each mortgage and distributing it to the certificate holders. In those instances where an assignment of rents had been made the Commission took over the management of the mortgaged properties, including leasing, collection of rents, paying of all operating expenses and performing all functions common to the operation and management of improved real estate. (2) *Foreclosure* — taking legal action required to prosecute foreclosure actions, supervising receivers appointed in such actions and acquiring title to mortgaged properties for the benefit of certificate holders. (3) *Reorganization* — taking legal action under the Schackno Act, *supra*, and the Mortgage Commission Act, *supra*, which became necessary to accomplish reorganization of certificated mortgages.

During the life of the Mortgage Commission, which extended from May, 1935, until September, 1939, it is said to have administered and reorganized, assigned to trustees

or satisfied certificated mortgages of a total principal amount which approximated $668,000,000 — all but about $12,000,000 in principal amount of the mortgages originally taken over. This accomplishment necessarily involved large expense, the amount of which was segregated under the headings of the three functions outlined above: *Servicing* costs,— $3,187,000; *Foreclosure* costs, $860,000; *Reorganization* costs,— $2,551,000. The total of these three items was approximately $6,598,000 which, excepting the salaries of the Commission and other minor items of expense, the Commission and its successor, the Superintendent of Insurance, are required by statute to allocate among all the certificated mortgages thus administered. The statute authorizing such recoupment by the Commission is section 24 of the Mortgage Commission Act (L. 1935, ch. 19, as amd. by L. 1936, ch. 729) which provided in part:

" § 24. Reimbursement for expenses. The commission shall allocate and charge to each property, bond or mortgage, or group thereof, such of its expenses incident to the exercise of any of its powers and such expenses as shall have been advanced by the superintendent of insurance or the superintendent of banks as it may determine are properly allocatable and chargeable to such property, bond or mortgage, or group thereof. All other expenses including the compensation of members of the commission, incident to the exercise of its powers by the commission shall constitute a charge against the moneys appropriated out of the general funds of the state. Allocatable and chargeable expenses shall include disbursements made by the commission and its subsidiaries and by the superintendent of insurance or the superintendent of banks, as well as an allowance to the commission and such of its subsidiary corporations as may be involved, of a sum sufficient reasonably to compensate it or them for any services, including legal services, rendered to such property, bond or mortgage, or group thereof, and *also for the servicing of such property, bond or mortgage or group thereof*, excepting therefrom compensation paid to the members of the commission. The commission may apply to

the court at any time for an order confirming the allocation of such disbursements, and upon such application the court shall allow to the commission and such of its subsidiary corporations as may be involved such reasonable amount as shall compensate it and them for any services including legal services, rendered to such property, bond or mortgage, or group thereof, and *also for the servicing of such property, bond or mortgage, or group thereof;* such application shall be made upon such notice as the court may direct, and the order of the court when entered shall be binding upon the commission and all holders of mortgaged investments affected. Subject to any prior lien or charge imposed pursuant to subsection four of section five hereof, the commission shall have a lien or charge upon the property, bond or mortgage, or group thereof, affected thereby superior to the right or interest therein of all holders of mortgage investments affected thereby for the reimbursement and payment of its expenses and the expenses of the superintendent of insurance and the superintendent of banks and the allowance made by the court and shall reimburse and pay itself and the said superintendents out of any moneys which constitute the proceeds thereof. * * *" (Emphasis supplied.)

It is the claim of the respondent that the deduction by the Commission of $2,774.75, the item here in controversy, for servicing mortgage No. 29,617 is of an amount which is tentative and that under section 24 of the Mortgage Commission Act, quoted above, an order which finally fixes the amount of that lien for servicing will not be made until the Commission has accounted for its total expense and has allocated that sum among all of the mortgages which it administered between May 21, 1935, and September 30, 1939.

In its challenge to the jurisdiction of this court to entertain the present appeal the respondent fails to distinguish between a proceeding in which some judicial action remains to be taken, and a proceeding — such as the one at bar — where the results of the order which is the subject of appeal

may be modified by court action at some later date in an entirely separate proceeding. There is also to be considered the fact that we are dealing with an order in a proceeding which involves a liquidation or rehabilitation by a statutory body, as distinguished from a proceeding in a judicial liquidation. In a proceeding of the latter type the court, through its receiver, conducts the affairs affecting the liquidation in the single proceeding in which the receiver is appointed, and motions for the adjudication of claims and other matters relating to the liquidation are addressed to the court, and remedies are sought " in that proceeding only." (*People* v. *American Loan & Trust Co.*, 150 N. Y. 117, 122.) In the former type of proceeding — a liquidation or rehabilitation by a statutory body, such as the present proceeding, the rule prevails that a motion addressed to a statutory liquidator or rehabilitator serves to commence a special proceeding. (*Matter of Carnegie Trust Co.*, 206 N. Y. 390, 394, 395. See Cohen, The Powers of the New York Court of Appeals, § 33, at pp. 108–112.)

Finality in the present proceeding — which we regard as a separate special proceeding under the rule last mentioned above — results from the fact that no further judicial action is either directed or contemplated by the order to be reviewed. (*Matter of President Self Service, Inc.*, v. *Affiliated Restaurateurs, Inc.*, 280 N. Y. 354, 361; *Matter of Grade Crossings* [*N. Y. C. R. R. Co.*], 255 N. Y. 320, 322; *Stimson* v. *Vroman*, 99 N. Y. 74, 79. See, also, Cohen, *supra*, § 3, at p. 14.) True it is that, at some future date not yet fixed, another proceeding separate from the one now before us, may be instituted by the Commission for an accounting of its administration of all mortgages placed in its charge on and after May 21, 1935. In such separate proceeding an adjustment of the servicing charge of $2,774.75, which it has made in connection with its administration of mortgage No. 29,617, may result either in a partial restitution to the certificate holders or an increase in the item itself. As no such adjustment can be effected in the present proceeding the order by which this proceeding is determined is final.

Passing to the merits of the question presented — there is involved that provision of the reorganization plan for mortgage No. 29,617 which presumed to prohibit a "service charge to certificate holders on account of arrears of interest collected or paid under" the proposed plan. In May, 1935, the arrears of interest and taxes under the mortgage requirements were approximately $53,000. Under the plan of reorganization the interest accrued and unpaid to July 1, 1934, was waived; the owner of the property was required to pay the back taxes in full and the term of the mortgage was extended for a period of five years from the date of closing the extension agreement. The plan also required that interest from July 1, 1934, to the date of closing should be computed at the reduced rate of three and one-half per cent per annum and was to be "paid in cash and in full by the owner simultaneously with the execution and delivery of the extension and modification agreement." On that basis the total amount of interest to be paid by the owner at the closing was $33,250. Meantime, however, between May 21, 1935, and December 22, 1936 (the date of closing), the Mortgage Commission, acting under an assignment of rents from the owner, had collected as income from the premises the sum of $16,730.58. That sum was to be credited upon the mortgage and when added to cash furnished by the owner in the amount of $16,519.42, made up the total of $33,250, which the plan required should be paid by the owner at the closing. It is this entire sum which the appellant trustee contends should have been paid over for the benefit of the certificate holders, undiminished by a "servicing" charge by the Mortgage Commission. Our conclusion is to the contrary.

No charge was made by the Commission against the cash contribution of $16,519.42 by the owner. But the sum of $16,730.58, to be credited upon the mortgage, represented rentals collected by the Commission from the mortgaged property. Such collections, as an incident to management of the mortgaged property by the Commission, constituted the "servicing of such property * * * or mortgage"

under the terms of the statute (L. 1935, ch. 19, § 24, as amd. by L. 1936, ch. 729) and thus became a legal basis for a "servicing charge." The phrase "arrears of interest collected or paid," as it appears in the clause of the plan which the appellant trustee asserts was intended to prohibit a servicing charge by the Commission, refers to that part of the owner's contribution at the closing which was paid in cash, viz., $16,519.42. It had no reference to the sum of $16,730.58 which was collected by the Commission after it had taken over the management of the property under an assignment of rents from the owner.

Such interpretation of the clause in question is in accord with the intent of the Legislature made clear in the statute last cited above — that the cost of servicing a mortgage, including the collection of rents as an incident of management of the mortgaged property, shall be borne by the mortgagee or fund benefited thereby, not by the State or by other mortgages being administered by the Commission. If the plan for the reorganization of mortgage No. 29,617 was designed to circumvent the statute, then to the extent of such circumvention it was ineffective. The provisions of the statute were impliedly read into the plan of reorganization. (*Home Building and Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 435.) They could not be cast out or waived by any one assuming to represent the Commission. (Cf. *City of New York* v. *Wilson & Co.*, 278 N. Y. 86, 90.) What was said in *Matter of People* (*Title & Mtg. Guarantee Co.*) (264 N. Y. 69) in relation to authority granted to the Superintendent of Insurance under certain provisions of the Schackno Act, *supra*, applies here with equal force where administrative authority under the Mortgage Commission Act, *supra*, is involved (p. 90): " When the Legislature authorized the Superintendent to administer that fund in place of the corporation, it is plain that it could also direct that the expenses should be a charge on the fund just as the expenses would have been in case such administration had been made by any other authorized person. The certificate holders are relieved of fees or

compensation payable ordinarily to trustee or agent. * * * [p. 91]. We construe the statute as authorizing deductions only for collection and ' other functions performed by ' the Superintendent in the administration of the property or mortgages in which a single group of certificate holders are interested."

The order should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, FINCH, RIPPEY, SEARS and CONWAY, JJ., concur.

Order affirmed.