New York City Employees' Retirement System, Appellant and Respondent, v. Amory V. Eliot et al., as Executors of Walter G. Eliot, Deceased, Respondents and Appellants.

194

(Argued March 19, 1935; decided April 17, 1935.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* and *Ralph W. Thomas* of counsel), for plaintiff, appellant and respondent.

*Charles L. Craig* for defendants, respondents and appellants.

HUBBS, J.  On May 27, 1921, Walter G. Eliot, then
an assistant engineer in the office of the President of the
borough of Queens, was appointed by the Board of
Regents of the State of New York to membership on the
State Board of Licensing for Professional Engineers and
Land Surveyors.  He took the oath of office on June 30,
1921.  From September 14, 1921, to August 21, 1925, he
attended sessions of the Board for which he was paid $10
per diem up to January, 1922, and thereafter $25 per diem.
His aggregate compensation for the period amounted to
approximately $8,000.  He was about sixty-four years of
age, and as an employee of the city, a member of the
New York City Employees' Retirement System.  By
reason of his age and membership in that system, he
became entitled upon retirement from the service of the
city, to make application for a retirement allowance to
the Board of Estimate and Apportionment, which, under
chapter XXVI of the Greater New York Charter (Laws

1901, ch. 466; amd. Laws 1920, ch. 427), is vested with the management of the funds of the system and for the purposes thereof is given the powers of a corporation. (Greater New York Charter, §§ 1701, 1710 and 1711, as amd.)

On July 20, 1921, after he had taken the oath of office as a member of the State Board of Licensing for Professional Engineers and Land Surveyors, he made application to the Board of Estimate and Apportionment for retirement from the city service. Subsequently, the latter Board, by resolution, granted to him an annual retirement allowance of $1,172.38 as of August 1, 1921. The annual retirement allowance was paid to him until August 31, 1925. Further payments were then refused and this action was instituted by the Board of Estimate and Apportionment under its corporate title, New York City Employees' Retirement System, to recover the payments already made, upon the theory that payments had been made in violation of section 1560 of the Greater New York Charter (amd. L. 1923, ch. 266), which reads: " If a person who may hereafter be awarded a pension from the city of New York or any of the departments thereof, or out of any fund under said city or any of its departments, shall hold any office, employment or position under the state or city of New York or any of the counties included within said city, except the offices of commissioner of deeds, notary public, or an elective public officer, the payment of said pension shall be suspended and forfeited during and for the time he shall hold such office, position, or employment; provided, however, that this section shall not apply where the pension and the salary or compensation of the office, employment or position amount in the aggregate to less than twelve hundred dollars annually."

Eliot counterclaimed for the amount of retirement allowance for the period from September 1, 1925, to the commencement of the action. At the trial it was

stipulated that findings of fact and conclusions of law be waived and that a verdict be directed with the same force and effect as if a jury were present. The trial court directed judgment for the plaintiff for $4,298.36 and dismissed the defendant's counterclaim.

That court handed down an opinion to the effect that it was the determination of the court that section 1560 of the charter is to be considered as part and parcel of the Retirement Act, that defendant as a member of the State Licensing Board was a State officer, that he was paid for his services from State moneys, that the acceptance of such employment in the State service precluded the receipt of his pension so long as he received in the aggregate $1,200 or more per annum, that the payments were made under a mistake of fact, that the Board of Estimate and Apportionment had no power to make the payments and no power to approve, ratify or adopt any action which it had no power in the first instance to take and that estoppel has no application.

The court said: " The section [1560, *supra*] expressly provides that in the events specified ' the payment of the said pension *shall* be suspended and forfeited.' The intent of the Legislature was to create a preference in favor of those eligible for State and city positions as against those retired by the city on a pension. This provision is self-operative." From that judgment the defendant appealed.

The Appellate Division expressed its agreement with the conclusions of the trial court as to the applicability of section 1560 to allowances under the Retirement Act during the period of his employment by the State; that Eliot was not legally entitled to retirement allowances and that he was not entitled to recovery on his counterclaim. However, since plaintiff did not prove that the retirement allowances had been paid to the defendant without knowledge on the part of plaintiff as to his employment by the State and the record indicated that

the plaintiff paid the allowances in good faith under the impression that Eliot was entitled thereto notwithstanding his position as a member of the Licensing Board, it held that the payment was made under a mistake of law rather than of fact. It further held that a municipality is not exempt from the rule that money paid under a mistake of law cannot be recovered back, and, therefore, that the plaintiff was not entitled to judgment for recovery of sums already paid. The Appellate Division modified the judgment by dismissing the complaint.

Subsequent to the trial, Eliot died. His executors, having been substituted, appeal to this court from the judgment dismissing the counterclaim and from an order of the Appellate Division dismissing an appeal from an order for a new trial on the ground of newly-discovered evidence. The New York City Retirement System appeals from the dismissal of its complaint.

There can be no doubt as to the correctness of the determination of the courts below with respect to the applicability of section 1560 of the charter to retirement allowances made under the Retirement Act. The defendants contend that section 1724 (amd. L. 1923, ch. 142) of the latter act, which is a part of the charter, is an expression of unmistakable legislative intention that section 1560 has no application to the provisions of the Retirement Act. Section 1724 reads in part as follows: " No other provision of law elsewhere in this act or in any other statute which provides wholly or partly at the expense of the city of New York for pensions or retirement benefits for employees in the city-service, shall apply to said employees who become members or beneficiaries of the retirement system established by this chapter, their widows or their other dependents."

Section 1724 is, by its terms, a limitation only upon other enactments which provide " for pensions or retirement benefits for employees in the city-service." Section 1560 is not such an enactment and has neither been

repealed by implication nor limited in its effect by anything contained in the Retirement Act.

It is clear that Eliot, as a member of the State Licensing Board, was a State officer. He was appointed by the Board of Regents, the appointees of which, authorized to exercise their functions throughout the State, are included in the term "state officer." (Public Officers Law, Cons. Laws, ch. 47, § 2.)

While it is true that it is the general rule that money paid under a mistake of law may not be recovered back, that rule, in certain instances at least, has been held not applicable to payments of public or trust funds by agents of municipalities. The Board of Estimate and Apportionment, although for the purposes of the Retirement Act possessing the powers and privileges of a private corporation, was nevertheless administering funds which were of a public nature. While certain contributions were made to the funds by employees, the major portion thereof constituted public moneys. They were all deposited with the Comptroller in trust for the divers members of the Retirement System, and were disbursable only in strict accordance with law. The Board of Estimate and Apportionment, in accepting the duties and obligations placed upon it by the Retirement Act, did not lose its character as a municipal agency.

The general rule as to payments made by public officers under a mistake of law is stated by text writers as follows: "Payments of public money made by officials under a mistake of law may be recovered." (3 Williston on Contracts, § 1599.)

"A payment of road and bridge taxes belonging to a township made to a city under the mistaken view that under the law the taxes so paid belonged to the city is no bar to a recovery by the township of the money so paid. The rule that payment made in mistake of law cannot be recovered was held not applicable to a municipality." (6 McQuillin on The Law of Municipal Corporations [2d ed.], § 2671.)

Such rule was asserted in *People* v. *Fields* (58 N. Y. 491), where the Comptroller had paid to members of certain fire companies amounts in excess of a sum authorized in a tax levy. This court, while stating the rule, there reversed on the ground that title to the money was in the city rather than in the State. The court there said: " The payment was made and received without any lawful power in the comptroller to make it. The defendant is chargeable with knowledge of this. It was a payment by an agent, who had no authority as such, to make it. It was, then, no payment by the principal in mistake of law or ignorance of facts. The principal, in legal view, had no part in the payment, and it was made against its will. It was equivalent to an appropriation by the appellant of the moneys to his own use, with the acquiescence and help of the officer of the city, who was authorized to pay them out not otherwise than in accordance with law. He having made the payment unlawfully, it was an act not within the scope of his agency and does not bind his principal \* \* \*. There is, for these reasons, a right of action somewhere, against the appellant, to recover the whole or a part of these moneys " (p. 505).

In *Board of Supervisors* v. *Ellis* (59 N. Y. 620), an action brought against a supervisor for recovery of moneys paid as a per diem allowance and for mileage while serving on committees of the Board when it was not in session, it was said: " It is claimed that this payment was voluntary, made with full knowledge of all the circumstances, and that it cannot now be overhauled. We are not called upon to overlook or stretch any of the rules which forbid a voluntary payment to be repented of and reviewed. The question is, whether the municipal corporation, the county of Richmond, is so far bound by the action of its board of supervisors as that it may not, in this case, be found outside of those rules" (p. 624).

The court there held that in cases of public agents the principal is not bound by their actions unless they act within the scope of their authority, and permitted a recovery.

The same rule was applied in *Village of Fort Edward* v. *Fish* (156 N. Y. 363), an action to recover moneys paid by plaintiff's board of water supply in settlement of a claim for damages for breach of a contract, which contract the court found to be illegal, and in *People* v. *Sutherland* (207 N. Y. 22) the court reversed a judgment denying recovery for moneys paid to a County Clerk for work performed for which no compensation was allowed by law.

We are not unmindful of the fact that this court, in *Cox* v. *Mayor* (103 N. Y. 519), affirmed a judgment dismissing a counterclaim to recover for moneys paid to a police justice in excess of his lawful salary. In that case it appeared that the excess salary was paid out of money lawfully raised by taxation for the purpose of paying the salary at the increased rates, and further that the claim would have been barred by the Statute of Limitations had that defense been set up in reply as a bar. The court stated that under the circumstances it would be a hard measure of justice to compel the defendant at that late date to restore the money. In affirming the General Term it did not discuss the principles of law involved. In so far as the decision is in conflict with our conclusions here we decline to follow it.

To the extent that these are trust funds, the rule that " Whoever receives property knowing that it is the subject of a trust and has been transferred [by the trustee] in violation of the duty or power of the trustee, takes it subject to the right, not only of the *cestui que trust*, but also of the trustee to reclaim possession of the specific property, or to recover damages for its conversion * * * " (*Wetmore* v. *Porter*, 92 N. Y. 76, 81) is applicable. (Cf. *Moss* v. *Cohen*, 158 N. Y. 240.)

For a general discussion of the rules applicable in actions for recovery of money paid by municipal officers under mistake of law to individuals and public officers, see 21 Ruling Case Law, pages 174 and 175.

The defendants contend that evidence offered and excluded as well as certain newly-discovered evidence tends to establish that before accepting the appointment to the Licensing Board, Eliot was advised by the secretary of the Retirement System and by the Corporation Counsel that his pension would be unaffected by such action. If such evidence had been received, it would not affect the result. Such advice was at most expressions of opinion on the part of municipal officials. It amounted only to an attempt to interpret the law. It could not amount to an estoppel, since no officer of a municipality has power " to impose liability upon the city by estoppel." (*Lord & Burnham Co.* v. *City of New York*, 251 N. Y. 198, 204.)

The defendants also contend that section 1560 of the charter is not self-executing, and that the pension was not suspended or forfeited by resolution of the Board of Estimate and Apportionment. Section 1560 declares what shall effect suspension or forfeiture of a pension — namely, the holding of an office within one of the classes specified in the section. Eliot's pension was suspended by operation of law during his incumbency of the State office. Payment thereof became, by reason of such suspension, an illegal act. No action by the Board of Estimate and Apportionment was required or could have added anything to the effectiveness of Eliot's act in serving and receiving compensation for service in the State office.

Since we reach the conclusion that the plaintiff is in nowise estopped from recovering back the moneys paid under a mistake of law, it follows that the judgment of the Appellate Division, in so far as it modifies the judgment of the Trial Term, should be reversed, and the judgment of the Trial Term affirmed, with costs in all

courts to the plaintiff.  The appeal from the order dismissing the appeal from the order denying a new trial on the ground of newly-discovered evidence should be dismissed.

CRANE, Ch. J., LEHMAN, O'BRIEN, CROUCH and LOUGHRAN, JJ., concur; FINCH, J.. not sitting.

Ordered accordingly.