In the Matter of RALPH E. NEWCOMB, Appellant, *v.* NEW YORK STATE TEACHERS' RETIREMENT SYSTEM et al., Respondents.

Third Department, January 31, 1974.

*Sneeringer & Rowley, P. C.* (*Richard R. Rowley* of counsel), for appellant.

*Louis J. Lefkowitz, Attorney-General* (*Jeremiah Jochnowitz* and *Ruth Kessler Toch* of counsel), for respondents.

STALEY, JR., J.  This is an appeal from a judgment and order of the Supreme Court at Special Term, entered October 24, 1972 in Albany County, which dismissed petitioner's application, in a proceeding pursuant to CPLR article 78, to vacate a determination of the New York State Teachers' Retirement System Board.

Petitioner became a member of the New York State Teachers' Retirement System (hereinafter referred to as the System) on September 3, 1934 while employed as a teacher by the Rochester City School District.  In July, 1940, he was ordered to active duty with the United States Army, and was placed on military leave of absence by the Rochester Board of Education.  Appellant remained in the Army until the termination of his military service on November 1, 1962.  On January 28, 1963, he resumed teaching in the Rochester City School District.  Thereafter, he applied for credit in the System for the entire period of his military service.  The System advised him that if he paid the sum of $4,422.53 he would receive credit for his military service which was not allowed cost-free.  On February 8, 1964, he paid this sum and was credited with 10 years' and 10 months' service, pursuant to subdivisions 6 and 9 of section 503 of the Education Law, and 11 years' service pursuant to subdivisions 1 and 4 of section 243 of the Military Law.

On November 19, 1970, petitioner was advised by the System that it had no legal authority to grant him credit for his military service, that its action was clearly in error as there was no justification for granting him credit for career military service, and that, pursuant to the Education Law, it was correcting the error and rescinding its prior action.  On or about December 23, 1970, the System paid appellant the sum of $5,788.63 representing the sum paid by him in February, 1964 plus interest from the date of payment to the date of its return.

Petitioner requested a hearing before the Retirement Board and, on April 29, 1971, the Retirement Board found no basis for reversing its determination set forth in the letter of November 19, 1970.  On August 13, 1971, appellant commenced this article 78 proceeding to review this determination alleging that

it was arbitrary and capricious, and that there was no reasonable basis for reversing the determination made in the month of February, 1964.

Special Term determined that section 243 of the Military Law '' was intended to aid only career teachers who took a temporary  ̀ ̰  ·e of absence to aid their country in times of emergency, not to help career military personnel who happened to teach before and after their military careers. As a career military officer, petitioner was ineligible for credit on his teacher's retirement for any period of his military service.'' Special Term also determined that the System had the power, pursuant to section 525 of the Education Law, to correct its mistakes and dismissed the petition.

Petitioner now contends that the System did not make a mistake when it granted him credit for military service in 1964 in that he had fulfilled all conditions precedent set forth in the Education Law and Military Law for such credit and, in any event, that, in the absence of fraud, the System had no power to correct an error under section 525 of the Education Law.

Under subdivision 6 of section 503 of the Education Law, a teacher in the public schools in this State at the time of his or her entrance into the armed forces of the United States may obtain credit for '' service in war '' after World War I provided that he or she had been honorably discharged or released under honorable circumstances. '' Section 243 of the Military Law was manifestly intended to apply to civil service employees whose purpose was to leave their civil service employment temporarily, in response to national need or in order to comply with the draft laws, but who intended to return to their civil service careers upon release from their military duties. It would be a patent absurdity to apply section 243 to the instant petitioner who voluntarily chose to make a permanent and full time career of her Navy service, for more than 20 years, to the exclusion of her Board of Education employment. Indeed, petitioner remained in her Navy post, and as part of the regular Navy, until such time as she was able to lay claim to and successfully obtain a disability retirement pension from the Navy. On the basis of this disability she now seeks a further pension from the Teachers' Retirement System.'' (*Matter of Wulff* v. *Teachers' Retirement Bd. of City of N. Y.*, 27 A D 2d 929, 930, affd. 21 N Y 2d 802.)

Section 243 of the Military Law was intended to give credit to those who interrupted their public employment for the purpose of serving their country in military emergencies and not confer additional benefits upon those who had elected to remain

in the military service as a permanent and full-time career officer after interrupting their public positions. (Cf. *Matter of Di Nucci* v. *New York State Teachers' Retirement System*, 39 A D 2d 807.)

Petitioner's contention that the System cannot, pursuant to section 525 of the Education Law, correct an error is without merit. While this section is entitled "Protection against fraud" and provides a penalty for false statements and falsification of records of the System, it also requires the System to correct any errors in the record which would result in any employee or beneficiary receiving from the System more or less than the employee would have been entitled to receive had the records been correct in the first instance, and the System is not estopped by erroneous acts of its administrative employees. (*New York City Employees' Retirement System* v. *Eliot*, 267 N. Y. 193; *Matter of Zucker* v. *New York City Employees' Retirement System*, 27 A D 2d 207, affd. 21 N Y 2d 904.)

The judgment and order should be affirmed, without costs.

GREENBLOTT, J. (dissenting). I dissent on the law. A reading of subdivision 6 of section 503 of the Education Law seems to indicate that, if in fact a former teacher who has served in wartime returns to teaching, he is entitled to his credits. No distinctions are made in the statute based upon the length of such military service. The majority, however, relies upon *Matter of Wulff* v. *Teachers' Retirement Bd. of City of N. Y.* (27 A D 2d 929, affd. 21 N Y 2d 802).

In my view, *Wulff* (*supra*) is inapposite. The petitioner there sought a reinstatement to her position as a teacher with the New York City Board of Education pursuant to section 243 of the Military Law so that she would have then been entitled to retire on a disability pension. Section 243 deals, among other things, with the right of one who has been engaged in qualified military service to be reinstated to a former position, and the decision in *Wulff* holds that, under the circumstances of that case, the petitioner was not entitled to avail herself of the benefits of that statute when her intent was to obtain a formal reinstatement so that she could retire immediately thereafter without actually resuming teaching service. The determination of petitioner Wulff's right to a disability retirement thus turned on the threshold question of whether section 243 entitled her to reinstatement. Here, petitioner Newcomb is not seeking benefits under section 243. It cannot be disputed that, unlike *Wulff*, he did in fact return to teaching. The question of whether he intended to return is answered by the fact that he did return.

If this were a true *Wulff* situation, the primary question would be whether Newcomb had a right to reinstatement. But since this is not the question before us, Newcomb having in fact returned to teaching — perhaps in reliance upon representations by respondent that he would be entitled to the benefits now in dispute — the question here is the extent to which he is entitled to benefits under section 503 of the Education Law, a statute which applies, by its own terms, notwithstanding any contrary provisions of section 243 of the Military Law (Education Law, § 503, subd. 6).

In *Matter of Di Nucci* v. *New York State Teachers' Retirement System* (39 A D 2d 807), we held that a teacher's post-military return to teaching need not be immediate to entitle him to benefits under section 243 of the Military Law. There, the petitioner had served in the Army for two years and did not immediately resume teaching after discharge. Here, petitioner served for 22 years, did return directly to teaching, and seeks benefits under section 503 of the Education Law. The latter provision does not, any more than section 243 of the Military Law, establish time limits for the return to teaching. Where is the line to be drawn?

In my view, the line is not to be drawn based upon the length of military service or of the hiatus before resumption of a teaching career. Rather, the inquiry should be directed at determining how much, if any, of military service is to be accepted as a valid substitute for teaching service according to the legislative mandate. The majority, in my view, errs in treating the question before us as an all-or-nothing proposition. Subdivision 6 of section 503 of the Education Law contains several requirements. The first is " service in war " after World War I, which essentially means World War II, the Korean War, or the Berlin crisis. For the purpose of this statute, as will later become relevant, World War II ended on June 30, 1947. It is for such service that credit is to be given as if one were engaged as a teacher during that time, provided the additional statutory requirements are met.

One such requirement is that one must have been a teacher " at the time of his entrance into the armed forces." To my mind, " entrance " is the key phrase here, and should not be construed to mean only the initial induction. Any subsequent re-enlistment during any peacetime period,* or a continuance in service during such a period when a soldier had a right to be discharged, or was no longer under a legal obligation to

---

* That is, in any period outside of the statutory time limits of World War II, the Korean War, or the Berlin crisis.

serve, could and should be construed as an " entrance " into the armed forces. Thus, if upon any date subsequent to June 30, 1947 and prior to June 25, 1950 (the statutory beginning of the Korean War), the petitioner had a right to return to civilian life, he can be considered to have newly " entered " the armed forces for the purposes of the statute. Since immediately prior to such " entry " he was a soldier and not a teacher, he would not meet the test of this element of the statute which requires him to have been a *teacher* at the time of such entry.

Thus, petitioner's service record must be examined. Without question, petitioner would be entitled to full credit for the period to at least June 30, 1947, since this was service in war that had not been interrupted, and which he had entered into at a time when he was a teacher. That petitioner might have re-enlisted one or more times during these war years of 1940–1947, should not bar him from credit, for the statute makes no distinction between voluntary and involuntary *wartime* service, as well it should not. However, if it appears that as of some date subsequent to June 30, 1947 petitioner would have had a legal right to be honorably discharged, he should be cut off from further credits, since he would for purposes of section 503 be deemed to have re-entered the armed forces *other* than for service in war and *not as a teacher at the time of such entry.* His subsequent service during the Korean War and the Berlin crisis would then not entitle him to credit since, at the time of entry in the military prior thereto, he would not have been a teacher.

This approach, in my opinion, gives effect to the legislative intent of extending credit to teachers who serve *during war* provided they do return to teaching. Petitioner should not, of course, be entitled to credit for his entire post-war military career which he embarked upon voluntarily, but by the same token, he should not be deprived of benefits to which he would otherwise have been entitled merely because he did subsequently embark upon such a career. As we held in *Di Nucci (supra)*, a hiatus between military service *for which credit is otherwise available* and the return to *teaching,* does not and should not defeat the right to such credit. Di Nucci's return to teaching was delayed by two years subsequent to the years of service *for which he was entitled to credit.* There is nothing in the statute which creates a distinction based upon the length of the delay in the return to teaching.

The majority appears to suggest a distinction between those who make a " career " out of the military and those who do

not.   Such an approach ignores the realities of modern life, where, with the availability of retirement after 20 years in many fields, two careers are not uncommon.   The only point of inquiry is whether he in fact made a career out of teaching, regardless of any other career he may have pursued.   The record discloses that petitioner actively taught from 1934–1940, and from 1963 to at least 1970.   In addition, the Legislature had seen fit to treat him as if he had taught for a period in between.   It is not the function of this court to decide otherwise where the statutory requirements have been met.

I would remand the matter to Special Term for an examination of petitioner's military service record and a determination of the amount of credit to which he is entitled in accordance with this opinion.

HERLIHY, P. J., SWEENEY and MAIN, JJ., concur with STALEY, JR., J.; GREENBLOTT, J., dissents and votes to reverse in an opinion.

Judgment and order affirmed, without costs.