J. TIMOTHY SHEA, as Executor of DOROTHY E. ROFFE Deceased, et al., Respondents-Appellants, v TEACHERS' RETIREMENT SYSTEM OF THE CITY OF NEW YORK et al., Appellants-Respondents.

First Department March 23, 1976

*Murray L. Lewis* of counsel *(L. Kevin Sheridan* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for appellants-respondents.

*John J. Reilly* of counsel *(Meyer Sheps* with him on the brief; *Meiselman & Reilly, attorneys),* for respondents-appellants.

STEVENS, P.J. Plaintiffs represent the estate of a deceased teacher, Dorothy Roffe, who retired on a disability pension prior to her death. The decedent had been a teacher in the city system for approximately 33 years and was a member of the Teachers' Retirement System. On January 11, 1969, while suffering from a terminal illness, having been operated upon for cancer in 1965, she applied for retirement. On February 19, 1969, Miss Roffe, who was bedridden, was examined at her home by a doctor, a permanent member of defendants' Medical Board, who determined that she should be retired on disability since her condition would not improve. In March, 1969 decedent was notified that she was retired as of February 19, 1969 and a first payment was received in May, 1969, prior to her death.

In her application for retirement, decedent selected Option "IV-b", which provides for a reduced pension and lump-sum payments to designated beneficiaries after death. Dorothy Roffe died on May 28, 1969, aged 59. Under the option chosen, decedent received $457.14 per month and, upon her death, the specific sum of $8,000 was to be paid to three beneficiaries, all relatives named by her. Had decedent not selected any option, she would have received a slightly larger sum per month but all payments would have ceased at her death. Under Option I, the optimum option where a member dies shortly after retirement, she would have received $429.51 per month and, at her death, her estate would have received $73,213.30.

Plaintiffs commenced an action to recover the sum of approximately $75,000 which they allege is due her estate, claiming that the information supplied by the Retirement System with respect to available options was insufficient to permit a member to make an informed election of options and that the information as supplied was erroneous and misleading because it was incomplete.

The complaint contains four causes of action, the first sounding in negligence, the second charging breach of fiduciary duty, the third, fraud, and the fourth seeking reformation.

The cause seeking reformation was severed during trial. The jury returned a verdict for plaintiffs under the first cause, finding that the pamphlet and application negligently described the benefits available. The remaining causes, including reformation, were dismissed by the court. Defendants appeal from the judgment for plaintiffs and plaintiffs cross-appeal from the dismissal of the second, third and fourth causes of action.

Defendants urge that the determination is against the weight of the evidence; that the Retirement System cannot be held liable for any error on its part in the dissemination of information to the decedent; and, that even assuming *arguendo* that it could, the facts of this case are insufficient to impose liability.

At trial, there was testimony by defendants' witness, Mr. Joseph Russo, Assistant Director of the Teachers' Retirement System and secretary to the Medical Board, that decedent was enrolled in the age 55, 25 years' ordinary service retirement plan. Under that plan, there would be a regular salary deduction which at age 55, after 25 years of service, would afford decedent 1% for every year "which would be 25 per cent of her last average five years' salary plus the amount in her annuity savings fund plus the increased take home pay." At the time of her retirement, decedent's annuity reserve, consisting of salary deductions plus interest, amounted to $25,633.53. Had she not filed a disability application, under the plan on file with the Retirement System, she would have been considered as having retired under Option I and her estate would have been entitled to her full reserve of $74,613.66, under the "death gamble" law (Administrative Code of City of New York, § B20-41.0).

Further evidence was introduced that the Teachers' Retirement Board distributed to its members, a booklet which undertook to present the Teachers' Retirement Law in "simple terms". The title page informed the reader that, "[t]hose interested in more information may consult the text of the Teachers' Retirement Law." However, at that time, section B20-46.0 of the Administrative Code, the pertinent provision, contained no reference to Option IV-b (although such reference was added July 1, 1970).

Decedent selected benefits under Option IV-b. In the pamphlet possessed by her at the time there were listed four prime or major options, Options I, II, III and IV under the

heading, "Know Your Options". Options I, II and III were somewhat specific and detailed the alternatives in the event of the death of the retiree or the beneficiary. Option IV contained no such warning. It stated:

"This option provides upon death, payment of any other benefit or benefits, actuarially sound and approved by the Actuary.

"EXAMPLE: Option four-b *(Applied to Annuity Reserve Only).*

"This optional selection provides that a stipulated sum may be left to a beneficiary or beneficiaries to be paid in a lump sum at the time of the death of the member or a sum not less than $10,000 may be left a beneficiary to be paid to the beneficiary in the form of an annuity during a lifetime of the beneficiary. Should the member survive the beneficiary, another beneficiary may be named for a lump sum only." (Emphasis supplied.)

While "annuity" is defined elsewhere as "that part of the retirement allowance [i.e., pension plus annuity] which is provided by the member's contributions (increased by interest)", there is nothing under Option IV which indicates that IV-b, in effect, constitutes a waiver or forfeiture of a member's pension rights. A fair reading of the provision would reasonably lead one to believe that the pension (i.e., the part of the retirement allowance paid by the city) remained alive and effective after the member's death.

While there may ·be a question as to whether the system was bound to supply information to its members in the manner chosen, there is no doubt that having undertaken to do so, it was bound to act carefully, for it could reasonably be expected that its members would rely upon such information. "[T]he bounds of duty are enlarged by knowledge of a prospective use" *(Glanzer v Shepard,* 233 NY 236, 240). Such knowledge may reasonably be inferred from all of the circumstances here present. Since Option IV-b was not included in the Administrative Code and was cited as an example, apparently having been devised by the system which had the power to do so, there was an obligation to so describe and define it that any teacher, a member of the class for whom it was intended, could understand its privileges, restrictions and limitations. The relationship of the parties was such that in good conscience an adequate elaboration of Option IV-b was required once defendants elected to make it available. The aim of the option was to encourage or shape the conduct of a member

reader. Negligence by omission to fairly or adequately state the hazards of the option should not relieve defendants where, as here, the jury found decedent acted in reliance thereon to her damage (cf. *Gediman v Anheuser Busch,* 299 F2d 537 [2d Cir., 1962]). The case having been fairly submitted to the jury, it cannot be concluded that the evidence and permitted inferences are insufficient to sustain the verdict. Since it appears that decedent had a close and affectionate relationship with certain members of her family and, with the knowledge that her illness was terminal, had written letters disposing in detail of her personal property and had executed a last will and testament, it is reasonable to assume that her natural disposition would be to make such persons the object of her bounty, rather than risk forfeiture not only of her pension, but of a portion of the annuity for which she herself paid.

In *Matter of Zucker v New York City Employees' Retirement System* (27 AD2d 207, affd 21 NY2d 904) cited in the dissenting opinion, petitioner, the executor of Judge Wecht's estate, sought benefits under Option 1, rather than Option 4, which had been chosen by the decedent, on the theory that decedent's selection of Option 4 was an offer which was automatically terminated by his death prior to its acceptance by the Board of Estimate and also because of section B3-56.0 of the Administrative Code, which refers to death after the effective date of retirement but before becoming "entitled" to a retirement allowance. However, in that case, decedent had in fact received three retirement allowance payments prior to his death in amounts exactly equivalent to three monthly payments under Option 4, the option which he had selected. Moreover, the erroneous information given by the Secretary of the Retirement System, that, in the opinion of the Corporation Counsel, the ordinary death benefit provisions of section B3-32.0 should apply, could not estop the system from denying the applicability of that section *(City of New York v Wilson & Co.,* 278 NY 86; *New York City Employees' Retirement System v Eliot,* 267 NY 193). Finally, and most importantly, it clearly appeared that the petitioner did not rely on such erroneous information.

The features distinguishing this case from *Matter of Zucker (supra),* are that there decedent selected Option 4, an existing option, which was clearly defined in the Administrative Code and in the retirement application. The information available to the decedent was more than adequate, so that he who ran

could read. In the instant case, involving a different system, the Teachers' Retirement System, Option IV-b was not contained in the Administrative Code and the only information pertaining thereto, which was given as an example under Option IV was both inadequate and misleading with regard to its effective scope. As stated in the example, Option IV-b "Applied to Annuity Reserve Only", leaving the reader to infer that the remainder of the retirement allowance was unaffected, not that it became nonexistent upon the death of the retiree. Evidently, the Teachers' Retirement System realized that the lack of adequate information invited a trap for the unwary, because, in 1970 and 1971, it amended the relevant section to explain at length and in greater detail the effect of the option.

Accordingly, the judgment entered upon a jury verdict on November 25, 1974, in the Supreme Court, New York County (WALLACH, J.), should be affirmed, without costs.

NUNEZ, J. (dissenting). In my view an affirmance herein sets a dangerous precedent and may tend to undermine the stability of pension systems. The pensioner's estate will now recover the maximum benefit which the pensioner could have selected but did not. And this remarkable result has been accomplished by the claim that defendants-appellants were negligent in failing to give enough information with respect to the options in a pamphlet sent to all members of the system and found among decedent's possessions on her death. There is no evidence whatever that she relied on the pamphlet nor indeed that she even read it. Benefits and options under the various pension systems are complicated and difficult to understand indeed. The writer has received a similar pamphlet concerning his own rights as a member of a retirement system but confesses his inability to clearly understand the benefits under the various options. The pamphlet sent to decedent summarizes the available options but warns that the text of the law itself should be consulted by those interested in more information. The description of the options seems to be adequate. There is nothing misleading therein. The only thing missing is the actual amount of money in each reserve for the individual member—obviously incapable of being included.

It seems to me to be well settled that even error on the part of the Retirement System, including erroneous affirmative assurances, is not a predicate for liability on the part of the system. This court so held in an opinion written by our

distinguished Presiding Justice, the author of this majority. In *Matter of Zucker v New York City Employees' Retirement System* (27 AD2d 207, affd 21 NY2d 904) the decedent's estate had been informed by the Secretary of the Retirement System that in the opinion of the Corporation Counsel the claim should be processed under section B3-32.0 of the Administrative Code of the City of New York. The advice was erroneous. This court held that such error could not bind the Retirement System, citing, at page 214, *City of New York v Wilson & Co.* (278 NY 86) and *New York City Employees' Retirement System v Eliot* (267 NY 193). If the system cannot be held liable for affirmatively giving erroneous information, certainly liability should not be imposed because in the jury's opinion a pamphlet authorized by the system contained incomplete information concerning benefits under the various options available to the decedent. (See, also, *Matter of Creveling v Teachers' Retirement Board,* 255 NY 364; *Matter of Gombar v New York State Employees' Retirement System,* 63 Misc 2d 527, affd 34 AD2d 1083; *Connolly v New York City Employees' Retirement System,* NYLJ, Sept. 24, 1975, p 9, col 2.) The majority's ruling opens the door to attack of a pensioner's choice henceforth every time the pensioner fails to choose the most favorable option—not most favorable to him or to her—but, as in this case, the most favorable to his estate or beneficiary. Ms. Roffe may have been suffering from a terminal illness but we know that many people will not accept such diagnosis. She chose the option which gave her the highest benefits during her lifetime. We have no right in good conscience, or in law, to interfere with her wishes and with the clear provisions of the applicable law.

I would reverse and dismiss the complaint and affirm that portion of the judgment which dismissed the second, third and fourth causes of action.

SILVERMAN, J. (dissenting). I agree with Judge NUNEZ's dissent. Like him I see no evidence of either negligence or proximate cause. The decedent was obviously not misled. She specified that her survivors should receive a total of $8,000 out of her interest in the Retirement System, writing in the figures herself, and not the $68,123 awarded below.

I would add that I find the whole idea of a negligence action in this situation somewhat anomalous. Election or failure to elect an option is a contractual matter between the employee and the Retirement System. Ordinarily any improper conduct

by one of the contracting parties which induces the other to enter into a contract is not a basis for a negligence claim; rather it is a ground either to invalidate the contract or to make the contract the parties intended, i.e. rescission or reformation. (In this case rescission would apparently be of no use to the plaintiffs as the only way that survivors could get anything was by affirmative selection of an option by the employee.) The Trial Judge dismissed the claim for reformation and perhaps other equitable relief as moot in view of the jury's determination; but he indicated that were he not taking that action, he would have dismissed the equitable claim on the merits.

MURPHY and CAPOZZOLI, JJ., concur with STEVENS, P. J.; SILVERMAN and NUNEZ, JJ., dissent in separate opinions.

Judgment, Supreme Court, New York County, entered on November 25, 1974, affirmed, without costs and without disbursements.