Peter LEONELLI, Plaintiff

v.

PENNWALT CORPORATION, Michael Young and T. Caddy, Defendants.

No. 82–CV–221.

United States District Court, N.D. New York.

June 25, 1990.

Hancock & Estabrook, Syracuse, N.Y., for plaintiff; James P. Burns, 3rd, Martha L. Berry, of counsel.

Bond Schoeneck & King, Syracuse, N.Y., for defendants; John D. Allen, of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

Defendants brought on a motion for summary judgment on plaintiff's complaint alleging that there are no genuine issues of material fact concerning plaintiff's causes of action based upon tort, misrepresentation and breach of contract. Plaintiff claims that the instant motion is barred by the doctrine of law of the case, and that, in any event, defendants' motion should be denied.

### Background

Plaintiff Peter Leonelli ("Leonelli"), a resident of New York, was employed by defendant Pennwalt "Pennwalt" of "the Company" Corp. ("Pennwalt" or "the Company"), a Pennsylvania corporation, for over twenty (20) years, having first been employed by the defendant in December, 1958, as a sales representative in Pennwalt's Pennchem Division.[1]

In the spring of 1976, defendant Terry Caddy ("Caddy") became manager of the Pennchem Division in an effort by Pennwalt to make this division of its company more profitable. During his deposition, Caddy admitted that in order to achieve his mission, he instituted a program which included, *inter alia*, (1) the termination of employees whom he classified as "non-performing", (2) a reduction in Pennchem's product line, and (3) changes in the "bonus" system available to Pennchem's sales staff.

In September of 1977, Leonelli fell from a ladder while visiting the Trinkles' farm in Cambridge, New York, as a part of his duties as the Pennchem division's sales representative. He experienced some pain throughout his left side, however it was not severe enough to require hospitalization at the time, nor did it require plaintiff to stay at home to recuperate.[2] Plaintiff's back problems worsened with the passage of time however, and by January of 1980 he was forced to stay at home while he awaited an operation on his back scheduled for later that month.

On January 24, 1980, plaintiff received a phone call at his home from defendant Caddy. Caddy advised Leonelli that the plaintiff was going to be terminated and, in response to an inquiry from Leonelli, Caddy advised the plaintiff that Leonelli had two alternatives concerning his future with Pennwalt: he could either be fired, thereby losing all of his benefits, or he could take early retirement and retain the benefits he had been receiving. Given these limited options, plaintiff chose the latter. Two days prior to Leonelli's hospitalization and operation, Pennwalt dispatched a representative who presented the plaintiff with his retirement papers, (which made no mention of plaintiff's disability,) secured his signature and reclaimed the company car plaintiff had been using for the past several years.

Despite the operation, plaintiff has been totally disabled since January, 1980. In his amended complaint, plaintiff asserts causes of action sounding in both tort and contract. In his tort claims, Leonelli alleges that the defendant was negligent when it failed to fully inform plaintiff of the benefits he was entitled to under the company's Salary Continuation Plan ("SCP") as a disabled employee of Pennwalt.[3] His contrac-

---

1. This division of Pennwalt specialized in the sale of cleaners and sanitizers to the food, beverage, and dairy industries.

2. In March of 1979, plaintiff experienced a severe case of gout, unrelated to his prior accident, which caused him to lose several weeks of employment.

3. Under its long-term disability plan, Pennwalt promises to pay up to twenty-six (26) weeks of salary to employees who have had three (3) or more years of continuous service with the company and are prevented from working due to illness.

tual claim alleges that the defendants failed and neglected to perform the conditions of Leonelli's benefits contract when plaintiff opted for early retirement.

Defendants bring the instant motion, claiming that (1) this motion is not barred by the doctrine of law of the case, (2) defendants are entitled to summary judgment on plaintiff's common law tort and misrepresentation claims and (3) summary judgment is appropriate as it relates to Leonelli's contract claim. Plaintiff opposes these motions.

### Discussion

#### (1) Law of the Case.

 This action has already been before the Second Circuit, and familiarity with this case is presumed. In *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195 (2d Cir.1989), the Court noted:

The Salary Continuation Plan provides that: "If you leave Pennwalt's employ for any reason, your participation in the Salary Continuation Plan ceases on your last day of work." . . . The district court agreed that since Pennwalt could have fired appellant at any time—thereby cutting off his rights to plan benefits—it did not deceive Leonelli when it told him he had only two options: retire or be fired. We disagree.

The quoted language of the plan is, as plaintiff contends, somewhat ambiguous. Although its language clearly prohibits a former employee from applying for salary benefits after his employment ceases, reading the plan so as to allow the company to fire an employee it knows is suffering from illness or injury rather than providing the promised benefits renders the plan's promise illusory. . . . Plaintiff presented evidence that it has been Pennwalt's policy to provide full benefits under the Salary Continuation Plan before a decision to terminate or retire the employee is made. . . . Obviously, the fact that Leonelli was an employee at will, subject to discharge anytime, does not relieve Pennwalt of the

obligation of dealing fairly with its employees and of living up to its promise to pay limited benefits to such employee when he is incapacitated or ill.

*Id.* at 1198.

The Court continued by stating:

[W]e think reasonable minds could differ regarding the meaning of the quoted portion of the Salary Continuation Plan and Pennwalt's policy in applying it. In sum, there are questions of fact present.

*Id.*

Finally, the Court held that:

The district court's grant of summary judgment dismissing plaintiff's complaint on the common law misrepresentation and breach of contract claims regarding the Salary Continuation Plan is reversed, and the matter is remanded to the district court for further proceedings on the merits. The denial of leave to amend plaintiff's complaint to state claims under ERISA is affirmed.

Affirmed in part, reversed in part, and remanded.

*Id.* at 1199.

Plaintiff claims that defendants' motion for summary judgment is barred by the doctrine of law of the case. It notes:

In the instant case, the Second Circuit remanded "for further proceedings on the merits" after holding that Defendants were not entitled to summary judgment on the common law misrepresentation and contract claims. Plaintiff submits that this mandate precludes further arguments directed to whether Plaintiff has a legal basis for his claims.[4]

The defendants concede that the doctrine of the law of the case, as it relates to the instant lawsuit, prohibits reargument concerning whether (a) the language of the SCP is ambiguous and (b) Pennwalt has a policy or custom of paying full Salary Continuation Benefits before a decision to terminate or retire an employee is made. However, they claim that in the present motion for summary judgment:

---

**4.** Plaintiff's Memorandum in opposition to defendants' motion for summary judgment, pp. 11–12.

'[D]efendants argue simply that plaintiff's tort causes of action cannot exist independently of his contract claim because they are one and the same. . ·. . Moreover, defendants contend that the contract claim must fail because plaintiff cannot demonstrate consideration.'[5]

In discussing the doctrine of law of the case, this Circuit has held that:

> When an appellate court has once decided an issue, the trial court, at a later stage in the litigation, is under a duty to follow the appellate court's ruling on that issue, and is precluded from altering the appellate decision. . . . However, from the proposition that the trial court must adhere to the decision and mandate of the appellate court there is the corollary that upon remand the trial court may consider matters not expressly or implicitly part of the decision of the court of appeals (citations omitted).

*United States v. Cirami*, 563 F.2d 26, 32–33 (2d Cir.1977). *See also Doe v. New York City Dep't. of Social Services*, 709 F.2d 782, 788 (2d Cir.1983), *cert. denied* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In the instant case, the Second Circuit's holding in *Leonelli* did not expressly state that the plaintiff has pled viable causes of action in tort and contract, nor was such a determination necessarily implicit in the court's ultimate finding. Rather, the court held that Pennwalt's SCP was ambiguously worded, and that Pennwalt may have had a policy of paying full benefits to its employees before a decision to terminate or retire an employee is made. Moreover, since defendants' motion must be denied without regard to the doctrine of law of the case, this court may assume their current motion for summary judgment is not barred by this doctrine. `

**(2) Plaintiff's tort causes of action.**

 Plaintiff's first, second, third and fourth causes of action allege different theories of negligence on the part of the defendants in failing to fully inform Leonelli of all of the options available to him under the SCP before plaintiff opted for early retirement.[6] The defendants contend that plaintiff's tort causes of action cannot exist independently of his contract claim because they are allegedly one and the same. Defendants are incorrect.

In *Gediman v. Anheuser Busch, Inc.*, 299 F.2d 537 (2d Cir.1962), this Circuit noted that actions sounding in both tort and contract can result from a dispute arising out of alleged contractual rights. The Court noted:

> When the action is on the contract, defendant may properly insist that the boundaries of its obligation are marked out by the technical terms used, whether [plaintiff] understood them or not; but when [plaintiff] sought advice and defendant gave this, it was bound to take account of the frailties of human understanding. . . . Having undertaken to advise, defendant was bound to advise clearly. "It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all." *Glanzer v. Shepard*, 233 N.Y. 236, 239, 135 N.E. 275 (Ct.App.1922) (Cardozo, J.)

*Gediman*, 299 F.2d at 546.

This duty to act with reasonable care when informing an employee about his or her rights under a benefits plan was more recently discussed in *Schlansky v. United Merchants & Manufacturers, Inc.*, 443 F.Supp. 1054 (S.D.N.Y.1977). There, the court held:

> As to the allegations of negligent misrepresentations and omissions, this court is well aware that under New York state common law, an employer's obligations under a pension plan are limited to that plan's terms and are solely contractual in nature. . . . However, it is elementary tort law that where no duty exists, a "voluntary assumption of a duty by affirmative conduct may arise." *See* W. Prosser, *Handbook of the Law of Torts*,

---

**5.** Defendants' Reply Memorandum, p. 3.

**6.** *See* Amended complaint, ¶¶ 15–35.

§ 56 at 338–48 (4th ed. 1971). In the case at hand, although the defendant would not have been negligent in remaining silent as to the terms of the pension plan, once a voluntary representation based on the plan's terms was uttered, a duty of care arose as to the accuracy and truth of those representations along with a concomitant obligation to avoid negligent omissions thereafter.

*Schlansky* at 1059–60 (citing *Gediman*) (citations omitted). *See also Shea v. Teacher's Retirement System,* 51 A.D.2d 345, 381 N.Y.S.2d 266 (1st Dep't.1976).

The defendants attempt to distinguish these cases (which this court collectively refers to as the *"Gediman* cases") in a variety of ways, however none of their arguments are persuasive.

Defendants argue that the court in *Gediman* permitted the plaintiff to pursue an action based in tort only because the plaintiff had no adequate contractual remedy available to him. However, *Gediman* never stated that its rationale was limited to actions where contractual claims were unavailable to plaintiffs, rather it simply re-iterated basic tort law principles which state that once an individual assumes a duty to act, he must act with reasonable care.

The defendants next allege that the circumstances, the nature of the conduct and the plaintiff's reliance on that conduct justified extension beyond breach of contract in the *Gediman* cases. However, neither the factual background nor the conduct of the parties in the *Gediman* cases was remarkably different from the circumstances surrounding the instant case. Moreover, the Second Circuit has found that Leonelli had a right to rely on the defendants, because Pennwalt had a duty to deal fairly with its employees and of living up to its promise to pay limited benefits to such employee when he is incapacitated or ill. *Leonelli,* 887 F.2d at 1198. Thus, the defendants would be liable to plaintiff in tort if they breached a duty of care owed Leonelli.

Defendants also claim that *Gediman* and *Shea* are distinguishable in that these cases involved complicated pension plans wherein some of the benefit options were described adequately and some were not. However, neither *Gediman* nor *Shea* ever claimed that their holdings should be limited to lawsuits involving complicated pension plans. Additionally, the Second Circuit has noted that the defendants in the instant case failed to adequately inform the plaintiff of his options under a SCP they found to be "somewhat ambiguous". *Leonelli,* 887 F.2d at 1198. Thus, there is no reason to believe that the SCP in this case was any easier to understand than those plans discussed in the *Gediman* cases which gave rise to tort-based causes of action.

Finally, the defendants argue that *Gediman, Schlansky* and *Shea* are distinguishable because they claim that the defendants in those cases undertook affirmative acts in describing the benefits of their respective plans, and the plaintiffs relied on those acts in choosing alternatives that reduced their benefits. However, it is clear that the plaintiff in the instant case is alleging the very same thing. Leonelli claims that Caddy was negligent when he informed plaintiff, in January of 1980, that he had two options concerning his future with Pennwalt: Leonelli could quit or he could be fired, when in fact the company's SCP allegedly gave Leonelli another alternative—the right to receive twenty-six (26) weeks of salary as disability pay. By failing to disclose this option to the plaintiff, the defendants may have been negligent in their representations to Leonelli, therefore their motion for summary judgment concerning plaintiff's first, second, third and fourth causes of action must be denied.

**(3) Plaintiff's breach of contract claim.**

 The defendants argue that plaintiff's contract claim must fail because they allege Leonelli gave no consideration for the SCP. They claim that plaintiffs who bring actions alleging contractual rights concerning a company's benefit plans must prove that (a) the defendant had a regular policy or practice of exhausting Salary Continuation benefits prior to terminating or retiring employees and (b) the employee relied on that policy or practice in accepting

or continuing employment (citing *Smith v. New York State Elec. and Gas Corp.*, 155 A.D.2d 850, 548 N.Y.S.2d 117, 118 (3d Dep't.1989)).

Defendants concede that in *Leonelli* the Second Circuit held that questions of fact exist concerning whether Pennwalt has a policy or practice of exhausting an employee's benefits prior to terminating or retiring employees. However, citing *Smith, supra,* they claim that summary judgment is appropriate on Leonelli's contractual claim because plaintiff has proffered no evidence that he accepted or continued his employment with Pennwalt because of the company's SCP.

The *Smith* court held that plaintiffs alleging breach of contract in cases involving corporate benefit plans are:

> [R]equired to come forward with evidence of (1) a regular practice by defendant to make severance payments, and (2) his reliance on this practice in accepting or continuing his employment.

*Id.* at 850, 548 N.Y.S.2d at 118 (citations omitted).

However, the plaintiff in *Smith*, unlike Leonelli, learned of the company's severance pay policy only *after* the termination of his employment, therefore it was clear that he never relied on that company's practice before he was fired. Accordingly, the court found that:

> [I]n the absence of plaintiff's detrimental reliance upon defendant's severance pay policy, we have no alternative but to conclude that the contract which plaintiff claims defendant breached was not supported by consideration and is, accordingly, unenforceable as a matter of law.

*Id.,* 548 N.Y.S.2d at 118. Thus, the court in *Smith* dismissed plaintiff's contract claim because the plaintiff in that case failed to prove reliance on the defendant's representations, and therefore gave no consideration for the alleged contract.

In the instant case, the plaintiff may have detrimentally relied on Pennwalt's policy concerning its SCP. Leonelli has testified in his affidavit that he relied upon the promise of benefits under Pennwalt's disability programs by refraining from purchasing other insurance from private carriers.[7] By relying on Pennwalt's policy concerning the company's SCP to his detriment, Leonelli may have given consideration sufficient to make the contract binding. Since there are questions of fact concerning this matter, defendants' motion for summary judgment must be denied.

### Conclusion

There are questions of fact concerning whether the defendants breached a duty of care owed Leonelli when they informed the plaintiff of his rights under the SCP. Therefore, defendants' motion for summary judgment on plaintiffs' first, second, third and fourth causes of action is denied. Additionally, there are questions of fact as to whether the defendants breached the provisions of Pennwalt's SCP when they did not inform Leonelli of all of the options available to him under this plan. Therefore, defendants' motion to dismiss plaintiff's fifth cause of action is also denied.

IT IS SO ORDERED.

---

7. Affidavit of Peter Leonelli, 3/22/90, ¶ 7. .